STATE OF WEST VIRGINIA

*v.*

DONALD HARTFORD CASDORPH *alias*

*"Little Red Bird"*

(No. 13610)

Decided December 7, 1976.

*Love, Wise, Robinson & Woodroe, Harry P. Henshaw, III and Thomas J. McQuain, Jr.,* for plaintiff in error.

*Chauncey  H.  Browning*, Attorney General, *E.  Leslie Hoffman,  III*, Assistant Attorney General, for defendant in  error.

NEELY,  JUSTICE:

This  is  an  appeal  from  a  conviction  of  robbery  under *W. Va. Code*, 61-2-12 [1961]. The defendant, Donald Hartford  Casdorph  alias  "Little  Red  Bird,"  assigned  as  errors:  (1)  the  indictment  was  defective  because  it  failed  to charge  the  defendant  with  the  crime  of  robbery;  (2)  the defendant's  pre-trial  confession  was  involuntary;  and,  (3) the  identification  of  the  defendant  at  the  police  station was  unduly  suggestive  and  should  have  been  excluded. We  find  no  error  and  affirm.

At  approximately  4:20  a.m.  on  December  19,  1973, Thomas  Edward  Fink,  a  Skyline  Cab  Company  driver, was  dispatched  to  pick  up  passengers  on  Route  21  at  a gasoline  station.  Mr.  Fink  went  to  the  station  and  picked up  two  young  men,  one  of  whom  sat  in  the  front  seat with  the  driver  while  the  other  sat  in  the  rear.

The  driver  went  to  the  designated  destination,  and stopped  the  cab.  The  passenger  in  the  rear  asked  the driver  for  change  first  for  a  twenty  and  then  for  a  ten dollar  bill.  The  driver  said  that  he  could  make  change for  the  ten,  immediately  after  which  the  rear  passenger grabbed  the  driver  by  the  neck  and  stated,  "You  sonofabitch,  we're  going  to  have  to  kill  you  if  you  don't  give  us your  money,"  and  proceeded  to  beat  the  driver.  The driver  gave  the  passenger  in  the  rear  seat  his  money.

The  rear  seat  passenger  then  stepped  out  of  the  vehicle  and  moved  to  the  front  seat  on  the  driver's  side, placing  the  driver  between  his  two  passengers.  There followed  a  drive  in  which  the  person  formerly  in  the  rear drove  the  vehicle  onto  an  Interstate  highway,  hit  numerous  guardrails,  and,  as  a  result,  began  to  tear  "the cab  all  to  pieces."  The  driver  soon  stopped  and  ordered the  victim  to  take  the  battery  out  of  the  car,  a  task which  the  victim  could  not  complete.  The  assailants

wiped their fingerprints from the cab and pulled the radio transmitter out and threw it over the hill. Then the assailants fled. The cab driver, who was unable to drive adequately because his glasses had been broken by the assault, found his way to a telephone and called his dispatcher to notify him of what had happened. After making the call, he returned to the cab garage in Charleston, from where two city policemen took him to a hospital for treatment.

On December 20, 1973, the defendant was arrested by Trooper D. R. Bush of the West Virginia Department of Public Safety and taken to the State Police Barracks at Cross Lanes, West Virginia. Upon arrival at the barracks, the defendant was advised of his rights, and the defendant executed a written waiver of his rights. A short time later the defendant signed a statement indicating his culpability in the robbery. Later, Trooper Bush called Mr. Frank Lyons, the supervisor for the cab Company, and asked him to locate the victim and instruct the victim to go to the Police Barracks where, the Trooper indicated, a suspect was in custody. Mr. Lyons notified the driver of the officer's instruction, and the victim proceeded to the State Police Barracks where he had an unarranged opportunity to observe the defendant, after which he identified the defendant as the person who attacked and robbed him.

I

Defendant complains that there is no allegation in the indictment that the defendant "specifically took the property from the *person* or in the *presence* of the victim" and, therefore, the indictment fails to charge the crime for which he was tried.

The indictment, in pertinent part, is as follows:

"The Grand Jurors ..., upon their oaths present, that DONALD HARTFORD CASDORPH, alias 'Little Red Bird' and CHESTER RAY GIBSON, on the      day of December, 1973, in the said County of Kanawha, in and upon one Thom-

as Edward Fink an assault did feloniously make, and him the said Thomas Edward Fink did then and there feloniously put in bodily fear, and Eleven Dollars in lawful United States Currency of the value of $11.00 of money, property, effects, goods and chattels of the said Thomas Edward Fink and lawfully in his custody and control, and against his will, then and there feloniously and violently did steal, take and carry away ...."

The defendant notes that the indictment omits the prepositional phrase, " ... from the person of the said ...," as is contained in the statutory form indictment for robbery, *W. Va. Code,* 62-9-6 [1931], as amended.

The test of the sufficiency of an indictment is whether it adequately informs the accused of the nature of the charge pending against him. *State v. Loveless,* 139 W. Va. 454, 80 S.E.2d 442 (1954). It is necessary for an indictment to set forth all the essential elements of the crime; surplusage is not required. The indictment in this case clearly makes out a case of robbery by violence and sufficiently apprises the accused of the charge which he must face. The indictment detailed a felonious assault upon a named victim, a felonious putting in bodily fear, a felonious taking of currency in a named amount against the will of the victim, and recited that the currency was "lawfully in [the victim's] custody and control." Our statute of jeofails, *W. Va. Code,* 62-2-11 [1923][1] cures any technical defect in an indictment when the indictment sufficiently apprises the accused of the charge which he must face.

## II

The defendant maintains that the State Police officer's adjuration to confess and offers of help made the defen-

---

[1]*Code* 62-2-11 (1923) provides:

"Judgment in any criminal case, after a verdict, shall not be arrested or reversed upon any exception to the indictment or other accusation, if the offense be charged therein with sufficient certainty for judgment to be given thereon, according to the very right of the case."

dant's confession involuntary. The following colloquy during the motion to suppress indicates that while the police officer was friendly, encouraged the defendant to confess, and promised in vague terms that he would help the defendant, no specific promises or threats were made.

"Q Did you act friendly towards him?

A Always friendly.

Q Did you encourage him to cooperate with you?

A Yes, sir.

Q Did you tell him you'd try to help him out, if he did?

A I told him it would be easier on him if he would try to cooperate. I advised him, if you got a lot of trouble, the best thing to do is try to ratify [sic] it.

Q Did you agree to go to bat for him with the Prosecutor or Court?

A I advised him if there was anything I could do. I'd be happy to do it.

Q Did you do anything?

A No, sir.

Q This was all before he signed the waiver?

A No, sir. He already signed his waiver.

. . .

Q Before you took his statement from him, didn't you in fact tell him that you'd help him out if he cooperated?

A No, sir.

Q You admit to saying that you say it was after you got the statement?

A I have always helped Donald. I have always helped him.

Q And you indicated that you would?

A Not that way. No, sir.

Q Not what way?

A Not that I was going to run up and ask the Prosecutor or Judge to do something for him."

During the motion to suppress the defendant took the stand and his account of the officer's conduct corroborated the police officer's; the defendant did not assert that the police officer made any promise to help him with the prosecuting authorities, nor did defendant assert that he was cajoled or intimidated into confessing either by a promise of leniency or a threat of harsher punishment. The record further reveals that the police officer had known the defendant for seven years before the crime and their relationship had been friendly. The defendant on one occasion asked Trooper Bush to contact his brother to let the brother know that the defendant was all right. It is these "offers of help" and statements by the police which defendant's counsel argues constituted coercion. The testimony of Trooper Bush, both on direct and cross examination, consistently indicates that any offer of help took place after the waiver of the defendant's rights. In West Virginia, once a defendant has knowingly, voluntarily, and intelligently waived his right to remain silent and consents to enter into a dialogue with police officers, a mere adjuration to confess for the good of defendant's soul or his mental health does not constitute the type of threat or intimidation which our law seeks to avoid, nor does a general offer of friendship unaccompanied by a specific promise to exact leniency from the prosecuting authorities constitute the type of benefit which would vitiate the voluntary quality of a confession.[2]

---

[2]We have also considered defendant's allegation that because of his poor physical condition resulting from a burn injury to his foot prior to his arrest, that he was peculiarly susceptible to suggestion and for that reason the confession was unvoluntary and find it without merit.

## III

The last assignment of error is that the pretrial identification of the defendant was unduly suggestive. The record reveals that the victim was called to the State Police Barracks by Frank Lyons, his supervisor. Upon his arrival at the State Police facility, the victim entered a room with Mr. Lyons. Mr. Lyons asked the victim " . . . had I seen the boy that robbed me or beat me up." The victim replied in the negative. The police officer was not present when the victim arrived.

As a result of the victim's response, Mr. Lyons instructed the victim to go back into another room and see if he could identify his assailant. The victim did so and recognized the defendant. The victim testified that this identification was made solely at the request of Mr. Lyons and was not prompted by Trooper Bush. Afterwards the victim advised Trooper Bush that he had seen and recognized the defendant at Mr. Lyons' request.

The record reveals that at the time of the offense, the victim was able to get a close look at the defendant, his features, and his build, and noted that the defendant limped. The victim testified that his recollection of the defendant was vivid; that he had ample opportunity to get a good look at the defendant's features because the dome light of the cab was on; and, that after the defendant assaulted him the defendant got into the front seat of the cab and sat next to him during their wild ride down the Interstate. Consequently the victim could make a positive in-court identification based upon his extensive observation of the defendant at the time of the crime.

While we recognize the important policy objective of avoiding mistaken identifications resulting from suggestive line-ups or other improper techniques discussed in *United States v. Wade,* 388 U.S. 218 (1967); *Gilbert v. California,* 388 U.S. 263 (1967); and *Stovall v. Denno,* 388 U.S. 293 1967 (1967), we find that *Neil v. Biggers,* 409 U.S. 188 (1972) articulates the correct rule for applica-

tion to this case. In *Neil v. Biggers* the U.S. Supreme Court said:

> "[T]he central question [is] whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive. As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

We have consistently held to the "totality of the circumstances" doctrine in our recent cases, *See, State v. Slie*, _____ W. Va. _____, 213 S.E.2d 109 (1975); *State v. Stollings*, _____ W. Va. _____, 212 S,E,2d 745 (1975); *State v. Moore*, _____ W. Va. _____, 212 S.E.2d 608 (1975) and find as a matter of fact from the record in the case that there was no prejudice to the defendant by virtue of the inadvertent confrontation between the prosecuting witness and the defendant at the police station.

For the foregoing reasons the judgment of the Intermediate Court of Kanawha County is affirmed.

*Affirmed.*