488 S.E.2d 894

**STATE of West Virginia ex rel. Thomas Red THOMPSON, Petitioner,**

v.

**Ron WATKINS Sheriff of Marion County, Respondent.**

No. 23991.

Supreme Court of Appeals of West Virginia.

Submitted June 3, 1997.

Decided June 11, 1997.

George Castelle, Public Defender, Diana P. Fisher, Assistant Public Defender, Charleston, for Petitioner.

Darrell V. McGraw, Jr., Attorney General, Scott E. Johnson, Senior Assistant Attorney General, Charleston, for Respondent.

PER CURIAM:

Petitioner, Thomas Red Thompson, invokes the original jurisdiction of this Court seeking a writ of habeas corpus to reduce two felony sentences.[1] The petitioner plead guilty to two counts of burglary in the Circuit Court of Preston County. He was sentenced to two one-to-fifteen year sentences. The two sentences were to run consecutively.[2] In this proceeding petitioner contends that he plead guilty to two counts of breaking and entering, not burglary. Petitioner requests that he be sentenced for the crimes of breaking and entering.[3]

## I.

### FACTUAL BACKGROUND

This case began on June 6, 1995. A twenty-seven count indictment was returned

---

**1.** This Court's original jurisdiction of a writ of habeas corpus is found in Section 3 of Article VIII, which reads in pertinent part: "The supreme court of appeals shall have original jurisdiction of proceedings in habeas corpus, mandamus, prohibition, and certiorari."

**2.** When the petitioner filed his petition he was being detained at the Marion County jail. Consequently, this Court issued a writ to show cause against the sheriff of Marion County, respondent,

Ron Watkins. However, subsequent to the petition being filed, petitioner was transferred to the Huttonsville Correctional Facility.

**3.** The petitioner initiated this proceeding pro se. This Court appointed the Kanawha County Public Defender's Office to represent the petitioner. Appointed counsel filed a supplemental brief on behalf of petitioner.

against the petitioner by a Preston County grand jury.[4] At a hearing on November 30, 1995, the petitioner and the State submitted to the circuit court a plea agreement. Under the plea agreement the petitioner agreed to enter a plea of guilty to burglary charges contained in counts one and twenty-four of the indictment and make full restitution. The State agreed to dismiss the remaining counts of the indictment and also agreed not to file a recidivist information against him.[5]

Before accepting the plea agreement the circuit court addressed the petitioner in open court where the following relevant exchange occurred: [6]

THE COURT: ... Before the Court accepts your pleas, the Court has to satisfy itself that your pleas are freely and voluntarily made. To do this, the Court first ha[d] you sign these petitions. In addition the Court will ask you certain questions and tell you certain things. If at any time you do not understand what I say, then you should say so. This is not a mere formality because two to thirty years of your liberty is in jeopardy. In other words, if you plead guilty to the first count charging daytime breaking and entering of a dwelling house, that's punishable by confinement in the penitentiary one to fifteen years. If you plead guilty to the twenty-fourth count charging daytime breaking and entering of a dwelling house, that also is punishable by one to fifteen years. ...

\* \* \*

DEFENDANT: Yes, Your Honor.

\* \* \*

THE COURT: Thomas Thompson, did you have this petition—Mr. Sabatino I believe said that you don't read well and that he explained what was in this petition to you, is that correct?

DEFENDANT: Yes, sir.

Once the circuit court determined that the petitioner voluntarily and intelligently entered the plea agreement, understood the nature of the charges and penalties, and understood that by pleading guilty he was waiving certain rights, the court accepted the plea.

On January 5, 1996, the petitioner appeared before the circuit court for sentencing.[7] During the sentencing hearing the following relevant exchange occurred between the petitioner and the court:

THE COURT: Thomas Red Thompson, you may stand please.... You have ... been convicted of daytime burglary. Under West Virginia law daytime burglary is a felony. You have ... been convicted upon pleas of guilty of two counts.... You were charged with seven separate burglaries....

You no doubt have heard it said that a person's home is his or her castle.

DEFENDANT: Yes.

\* \* \*

THE COURT: ... Apparently over about a two day period these burglaries occurred, but each of them is a separate offense. Had you been convicted of all of the charges you would be facing seven separate burglary sentences. And seven would be seven to a hundred and five years. If you had been convicted of all of those charges, and I'm not including all of the 27 charges that there are here....

... Even though you may not read or write with skill, that doesn't mean that you're not responsible and that doesn't mean that you can't work and support yourself. That doesn't mean that you are entitled to violate the law....

---

4. On the same date the grand jury returned a twenty-seven count indictment against the petitioner's co-defendant brother. The petitioner and his brother were represented by the same attorney at the trial level.

5. Petitioner's co-defendant brother entered the same type of agreement with the State, except for the recidivist promise.

6. The circuit court simultaneously addressed the petitioner's co-defendant brother.

7. The petitioner's co-defendant brother was sentenced at the same hearing.

Thomas Red Thompson, do you have anything to say why the sentence and judgment of the Court should not be pronounced in your case at this time?

DEFENDANT: No, sir.

The circuit court sentenced the petitioner to one-to-fifteen years for each of the two counts of burglary, to run consecutively.[8]

In July of 1996 the petitioner mailed a handwritten letter to the circuit court requesting the court reconsider the sentences. The sole basis for the request was petitioner's belief that he was reformed. By order entered August 30,1996, the circuit court denied the request for reconsideration. On September 19,1996, this petition for habeas corpus was filed. In this proceeding the petitioner challenges the legality of his sentences on the grounds that a caption appeared on counts one and twenty-four of the indictment describing each offense as "breaking and entering", and not as burglary.[9] The petitioner contends that he should have been sentenced for the crime of breaking and entering.[10]

## II.

### JURISDICTION

 In this original jurisdiction habeas corpus proceeding the burden is upon the petitioner to establish the illegality of his sentences. *See* Syl. Pt. 3, *State ex rel. Clancy v. Coiner,* 154 W.Va. 857, 179 S.E.2d 726 (1971) ("The burden of proving that a plea was involuntarily made rests upon the pleader."). Additionally, as we indicated in syllabus point 1 of *Potter v. Mohn,* 163 W.Va. 474, 256 S.E.2d 763 (1979):

8. The court also determined that petitioner's sentences would run concurrently with sentences the petitioner received for convictions in Marion County.

9. The petitioner seeks a reduction in his sentences, not a withdrawal of his pleas. Also, the petitioner does not allege ineffective assistance of counsel at the plea or sentencing hearing.

10. Breaking and entering is the term most commonly associated with W.Va.Code §§ 61–3–11(b) (Supp.1996) and 61–3–12 (1992). The former addresses entering without breaking and the latter addresses breaking and entering certain spe-

When a conviction rests upon a plea of guilty, the record must affirmatively show that the plea was intelligently and voluntarily made with an awareness of the nature of the charge to which the plea is offered and the consequences of the plea. Syllabus Point 1, *Riley v. Ziegler,* [161] W.Va. [290], 241 S.E.2d 813 (1978).

## III.

### DISCUSSION

#### A.

#### The Indictment

The petitioner first argues that the counts to which he plead did not use the term "burglary" as required by law. The two counts for which the petitioner entered pleas of guilty were set out in the indictment as follows:[11]

*FIRST COUNT:* WEST VIRGINIA CODE: 61–3–11(a) BREAKING AND ENTERING FELONY

That on or about the ___ day of November, 1994, in the County of Preston, State of West Virginia, Thomas "Red" Thompson committed the offense of "Breaking and Entering" by unlawfully and feloniously in the daytime break and enter a dwelling house used and occupied by Everett Shaffer, with the intent to commit a crime therein, in violation of *West Virginia Code* § 61–3–11(a), against the peace and dignity of the State.

*TWENTY–FOURTH COUNT:* WEST VIRGINIA CODE: 61–3–11(a)

cific structures. Both offenses carry a term of one-to-ten years confinement.

11. The offense of burglary is set forth in W.Va. Code § 61–3–11(a) (Supp.1996) as follows:

(a) Burglary shall be a felony and any person convicted thereof shall be confined in the penitentiary not less than one nor more than fifteen years. If any person shall, in the nighttime, break and enter, or enter without breaking, *or shall, in the daytime, break and enter, the dwelling house, or an outhouse adjoining thereto or occupied therewith, of another, with intent to commit a crime therein, he shall be deemed guilty of burglary.* (Emphasis added.)

### BREAKING AND ENTERING FELONY

That on or about the ___ day of November, 1994, in the County of Preston, State of West Virginia, Thomas "Red" Thompson committed the offense of "Breaking and Entering" by unlawfully and feloniously in the daytime break and enter a dwelling house used and occupied by Darwin E. Titchenell and Linda Titchenell, with the intent to commit a crime therein, in violation of *West Virginia Code* § 61–3–11(a), against the peace and dignity of the State.

■ The petitioner is correct in asserting that an indictment charging burglary must set out the word "burglary". This Court held in syllabus point 2 of *State v. Meadows*, 22 W.Va. 766 (1883) that "[a]n indictment for burglary must charge, that the offence was 'burglariously' committed; otherwise it is bad." *See* W.Va.Code § 62–9–9 (1992) (setting out example of indictment for burglary). However, in addressing the issue of a defect in an indictment [12] this Court stated in syllabus point 1 of *State v. Miller*, 197 W.Va. 588, 476 S.E.2d 535 (1996) that:

Rule 12(b)(2) of the West Virginia Rules of Criminal Procedure requires that a defendant must raise any objection to an indictment prior to trial. Although a challenge to a defective indictment is never waived, this Court literally will construe an indictment in favor of validity where a defendant fails timely to challenge its sufficiency. Without objection, the indictment should be upheld unless it is so defective that it does not, by any reasonable construction, charge an offense under West Virginia law or for which the defendant was convicted.

■ In the case *sub judice* there is no indication in the record that the petitioner timely objected to the fact that the word burglary was omitted from the relevant counts of the indictment. In view of the record in its totality and the matters discussed forthcoming, we find the omission of the word burglary from counts one and twenty-four of the indictment to be harmless error. The petitioner "was not deprived of any constitutional rights." *State v. Furner*, 161 W.Va. 680, 683, 245 S.E.2d 618, 619 (1978). (Citation omitted.) Nor has the petitioner demonstrated any prejudice by the omission. *See State v. Atkins*, 163 W.Va. 502, 510, 261 S.E.2d 55, 60 (1979) ("[W]here a nonconstitutional error has been asserted, we have adopted the rather general rule that the case will not be reversed unless the error is prejudicial to the defendant.") (citation omitted); W.Va.R.Cr.P., Rule 52(a) ("Any error, defect irregularity or variance which does not affect substantial rights shall be disregarded.").[13]

■ The next contention raised by the petitioner is that the language in counts one and twenty-four of the indictment did not set out the actual offense of burglary. It was stated in syllabus point 1 of *State v. Casdorph*, 159 W.Va. 909, 230 S.E.2d 476 (1976) that "[t]he test of the sufficiency of an indictment on appeal is whether it adequately in-

---

12. W.Va.R.Cr.P., Rule 12(b)(2) states in relevant part:

(b) ... The following must be raised prior to trial:

\* \* \* \* \* \*

(2) Defenses and objections based on defects in the indictment or information (other than it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings)[.]

Additionally, W.Va.R.Cr.P., Rule 12(f) states in relevant part:

(f) Failure by a party to raise defenses or objections or to make requests which must be made prior to trial, ... may constitute waiver thereof[.]

13. *See also* W.Va.Code § 62–2–11 (1992), which provides:

Judgment in any criminal case, after a verdict, shall not be arrested or reversed upon any exception to the indictment or other accusation, if the offense be charged therein with sufficient certainty for judgment to be given thereon, according to the very right of the case.

We noted in *State v. Casdorph*, 159 W.Va. at 912, 230 S.E.2d at 479, that "[o]ur statute of jeofails, W.Va.Code, 62–2–11 (1923) cures any technical defect in an indictment when the indictment sufficiently apprises the accused of the charge which he must face."

formed the accused of the nature of the charge pending against him, and while it must allege every element of the offense, no particular form of words is required." This Court indicated in syllabus point 1 of *State v. Mullins*, 181 W.Va. 415, 383 S.E.2d 47 (1989) that " '[a]n indictment for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based.' Syl. pt. 3, *State v. Hall*, 172 W.Va. 138, 304 S.E.2d 43 (1983)." *See also* Syl. Pt. 2, *Miller*, (in part, "An indictment need only meet minimal constitutional standards, and the sufficiency of an indictment is determined by practical rather than technical considerations."); Syl. Pt. 1, *Furner*, ("An indictment is sufficient when it clearly states the nature and cause of the accusation against a defendant, enabling him to prepare his defense and plead his conviction as a bar to later prosecution for the same offense."). We are not persuaded that the relevant counts of the indictment fail to set out the crime of burglary. Counts one and twenty-four reference to the proper Code citation for the crime of burglary. and reasonably track the language of W.Va.Code § 61–3–11(a).[14] Therefore the indictment was sufficient to sustain the plea convictions and sentences.

■ Finally, the petitioner contends that the use of the caption "BREAKING AND ENTERING" in counts one and twenty-four of the indictment was misleading. The petitioner has failed to demonstrate that he was mislead by the caption. The use of the caption "does not alter the substance of the allegations of the indictment, or ... confuse or prejudice the petitioner, and does not vitiate or render the indictment null and void." *State ex rel. McCormick v. Hall*, 150 W.Va. 385, 387, 146 S.E.2d 520, 521 (1966), overruled on other grounds, *State v. Furner.* The caption "BREAKING AND ENTER-

ING" was pure surplusage in the indictment. This Court has recognized that the inclusion of surplusage in an indictment is not a fatal defect which renders conviction upon the indictment reversible. In syllabus point 1 of *State v. McGraw*, 140 W.Va. 547, 85 S.E.2d 849 (1955), it is stated that "[i]mmaterial, unnecessary and harmless averments, which might be omitted without affecting the charge in an indictment against the accused and which need not be proved, may be properly considered and rejected as surplusage." We also said in *Miller:*

> Once we have determined the indictment was sufficient to sustain [the] ... conviction[s], the additional point raised by the [petitioner] that the inclusion of the words ['BREAKING AND ENTERING'] was prejudicial is without merit. At best, the words would be nonprejudicial surplusage. If the [petitioner] was of the belief the surplus language was of some kind of a disadvantage, [he], being the only party who can so move, should have moved to strike the language under Rule 7(d) of the West Virginia Rules of Criminal Procedure. ("The court on motion of the defendant may strike surplusage from the indictment or information.') *See United States v. Miller,* 471 U.S. 130, 136, 105 S.Ct. 1811, 1815, 85 L.Ed.2d 99, 105 (1985) ("[a] part of the indictment unnecessary to and independent from the allegations of the offense proved may normally be treated as 'a useless averment' that 'may be ignored.' " (Citation omitted)). Failing to avail h[im]self of this rule, the contention is forfeited.

*Miller,* 197 W.Va. at 600 n. 15, 476 S.E.2d at 547 n. 15.

### B.

### The Plea Agreement

■ The plea agreement signed by the petitioner set out the substance of the offense of burglary and its penalty. Counsel

---

**14.** The petitioner also argues that the words in counts one and twenty-four were misleading be-

cause they were indistinguishable from the of-

for petitioner indicated during oral argument that use of the words "breaking and entering," in the plea agreement, caused the petitioner to believe he was agreeing to plead guilty to breaking and entering and the penalty appropriate for that offense.[15] We have held that "the state bears the primary responsibility for insuring precision and unambiguity in a plea agreement because of the significant constitutional rights the defendant waives by entering a guilty plea. If a plea agreement is imprecise or ambiguous, such imprecision or ambiguity will be construed in favor of the defendant." *State ex rel. Forbes v. Kaufman*, 185 W.Va. 72, 77, 404 S.E.2d 763, 768 (1991). The concern with imprecision and ambiguity echoed in *Forbes* is tempered by syllabus point 2 of *Thomas v. Leverette*, 161 W.Va. 224, 239 S.E.2d 500 (1977), wherein we stated, in part, that "in order for a guilty plea to be knowingly and intelligently entered, the defendant must be informed of the elements of the offense charged against him."

We reject the argument of petitioner's counsel that petitioner did not understand he was pleading guilty to burglary. This argument is undermined by the objective facts that appear in the record.[16] The trial court read the plea agreement in open court to the petitioner, indicating the substance of the charges he was pleading to and the penalties.[17] Trial counsel for the peti-

---

fenses set out in W.Va.Code §§ 61–3–11(b) and 61–3–12. We find no merit to this argument.

**15.** The petitioner also argues that the prosecutor stated at the plea hearing that the punishment was two-to-twenty (meaning consecutive one-to-ten sentences), which is the punishment for breaking and entering. *See* note 10, *supra.* The argument raised is presented out of context. During the initial preliminary discussions between the court and counsel, the prosecutor stated only once that he believed the punishment was two-to-twenty. During the hearing, the indictment and plea agreement were discussed with the petitioner. The record reflects that the petitioner was repeatedly informed of the correct punishment he faced. At no point was there an objection to the one incorrect statement made by the prosecutor. Placed in its proper context, any error arising from the statement is harmless. *See State v. Marple*, 197 W.Va. 47, 475 S.E.2d 47 (1996) (harmless error found when improper remark about defendant's post-*Miranda* silence was made, but was not dwelled upon or repeated by prosecutor).

**16.** The record demonstrates compliance by the circuit court with matters set out in W.Va.R.Cr.P, Rule 11, which provides in pertinent part:

(c) Advice to Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

(1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and

(2) If the defendant is not represented by an attorney, that the defendant has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent the defendant; and

(3) That the defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that the defendant has the right to tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right against compelled self-incrimination, and the right to call witnesses; and

(4) That if a plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading guilty or nolo contendere the defendant waives the right to a trial; and

(5) If the court intends to question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant has pleaded, that the defendant's answers may later be used against the defendant in a prosecution for perjury or false swearing.

(d) Ensuring That the Plea Is Voluntary. The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the state and the defendant or the defendant's attorney.

**17.** The petitioner asserts that the circuit court only spoke directly to his co-defendant brother. The transcripts from the plea hearing refute this assertion. The circuit court went to great lengths to make certain that both defendants were addressed individually.

tioner informed the circuit court that he had explained the plea agreement to the petitioner and that petitioner understood the agreement. The petitioner acknowledged at the plea hearing that he understood he was pleading guilty to two counts of burglary,[18] and that he faced a sentence of one to fifteen years confinement on both counts.[19]

## IV.

## CONCLUSION

Based upon the foregoing discussion, the writ is denied.

Writ denied.

18. The petitioner cites language from our decision in *Call v. McKenzie*, 159 W.Va. 191, 220 S.E.2d 665 (1975) for the proposition that circuit courts are required to have defendants recite the crime to which they plead guilty and the penalty. The petitioner points out that in the instant proceeding the circuit court did not force him to recite the charges to which he plead guilty and the penalties he faced. *Call* did not impose such a requirement on circuit courts. We pointed out in *Thomas* that *Call* merely "suggested specific inquiries that should be made of the defendant at the time his guilty plea is taken in order to forestall future attack on the guilty plea by way of a habeas corpus proceeding. *Call* acknowledged that the failure of the trial court to follow each suggested inquiry would not invalidate the guilty plea." *Thomas*, 161 W.Va. at 227, 239 S.E.2d at 502.

19. The petitioner raises in his petition, but does not argue in his brief, two other matters. *See State v. Lilly*, 194 W.Va. 595, 605 n. 16, 461 S.E.2d 101, 111 n. 16 (1995) (where we pointed out that "casual mention of an issue ... is cursory treatment insufficient to preserve the issue on appeal.") (citation omitted). First, the petitioner contends that he did not receive the judgment order timely, therefore his letter seeking a reduction in sentence was sent after the 120 day period required by W.Va.R.Cr.P., Rule 35(b) for filing a motion for reduction of sentence. The record indicates the judgment order was entered on January 9, 1996. The petitioner's letter was received by the court in July of 1996. Nothing in the record indicates when the petitioner or counsel actually received the judgment order. The petitioner had the burden in this proceeding of making those facts available for examination. This issue, however, is ultimately without merit and does not amount to ineffective assistance of counsel. The circuit court's order denying the request to reduce the sentences specifically stated that "even if timely filed the Court would deny the motion for reduction of sentence for reasons stated at the time of sentencing[.]"

The second matter alleged by the petitioner is that the circuit court did not inform him of his appeal rights. This issue is also without merit. The record indicates that during the plea hearing the following exchange occurred between the court and petitioner:

THE COURT: ... Do you also understand that you give up any right that you have to appeal except on two grounds? Number one, if this court had no jurisdiction over your cases or, number two, if the Court imposes a sentence greater than that allowed by law, you can appeal that. But, otherwise, no appeal.

\* \* \* \* \* \*

Thomas Thompson, you understand except for those two grounds you give up any other right to appeal?

DEFENDANT: Yes, sir.