513 S.E.2d 911

**STATE of West Virginia, Appellee,**

v.

**Daniel B. ZACKS, Appellant.**

No. 25204.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 12, 1998.

Decided Dec. 14, 1998.

Darrell V. McGraw, Jr., Esq., Attorney General, Silas B. Taylor, Esq., Senior Deputy Attorney General, Charleston, West Virginia, Attorneys for the State of West Virginia.

Franklin D. Cleckley, Esq., Morgantown, West Virginia, Attorney for the Appellant.

PER CURIAM:

This appeal from the Circuit Court of Taylor County arises from the conviction of the appellant, Daniel B. Zacks, in a jury trial of one count of entering without breaking, two counts of larceny, and one count of conspiracy. On appeal, the appellant contends that the trial court improperly admitted evidence of "other bad acts" in violation of Rule 404(b) of the *West Virginia Rules of Evidence*, and improperly allowed the prosecutor to amend the indictment.

After a review of the record, we affirm the conviction.

## I.

On July 16, 1996, Phillip Ramey and his wife Grace Ramey signed a contract to purchase an old church in Grafton, West Virginia. The Rameys bought the church for $10,000, paying the owner $1,000 down and the rest in monthly payments. The purchase contract contained a clause stating that the owner of the church, Ruby Foley, had the right to retain all of the personal property in the church, including "the pews, pulpit, pictures and chairs" and had a reasonable time to remove those items.

Within several days of the signing of the contract, the appellant and the Rameys entered into the church and removed all of the personal property, including the pews, pulpit and chairs. The group hired several neighborhood youths (some of whom testified at

trial) to help load the property into a U–Haul truck. Grace Ramey testified that they decided to take the pews and other items and, if Ruby Foley found out, Phillip Ramey would "tell her a story that they got vandalized and stolen." The appellant, in the company of two of the neighborhood youths, took the removed items in the U–Haul to Burlington, Kentucky, where the church items were displayed, and some were sold, at an antique fair.

Approximately one week later, the Rameys returned to Grafton without the appellant, went to the courthouse and obtained a list of vacant properties that might contain antiques. Based on that list, the Rameys went to a house owned by James H. Glenn, Jr., a resident of Florida. Phillip Ramey broke the door to the house down and entered the premises. While in the house, Phillip Ramey instructed one of the neighborhood youths to forge a false receipt indicating that the personal property in the house had been sold to Phillip Ramey by "Mr. Glenn."[1] After removing several items of property from the house, the Rameys replaced the regular door lock with one of their own.

On July 26, 1996, the appellant met with the Rameys and entered Mr. Glenn's house. The appellant, assisted by the Rameys and several boys from the neighborhood, proceeded to load a rented U–Haul with furniture and other household items taken from the Glenn residence. The appellant directed the loading activity, instructing the group to "pick up as much stuff as [they] could in the time we were given ."

At some point the Grafton police were alerted that someone was removing furniture from the Glenn residence. The appellant, with the Rameys as passengers, drove the U–Haul out of Grafton and Taylor County and into neighboring Harrison County. There the truck was stopped by local police, and the appellant was arrested. A later execution of a search warrant on the truck revealed it to be full of items from the Glenn house.

---

1. The receipt reads: "I Mr. Glenn sold Phillip contents of house for $700.00. Sighned, [sic] Mr. Glenn." The appellant, who had two years of college education and claimed to be a dealer in architectural antiques, later testified that this receipt convinced him that Phillip Ramey owned the property.

The appellant was subsequently indicted for breaking and entering the Glenn house; larceny of property belonging to Mr. Glenn; conspiracy to commit larceny; and larceny of property belonging to Mrs. Foley. The State subsequently amended the indictment to change the first count to entering without breaking the Glenn house. After a jury trial, the appellant was convicted on all four counts. By an order dated December 29, 1997, the circuit court sentenced the appellant to one to ten years in the penitentiary on each count. The sentences on counts I and II are to run consecutively; the sentences on counts III and IV are to run concurrently with the other sentences.

The appellant then petitioned for appeal to this Court.

## II.

## A.

### Evidence of Collateral Crimes

■ The appellant's first assignment of error is that the circuit court abused its discretion and improperly admitted "other crimes" evidence in violation of Rule 404(b) [1994] of the *West Virginia Rules of Evidence* [2] over defense counsel's objection.

At the beginning of trial, the appellant moved *in limine* to have references to certain unrelated crime evidence excluded from the trial. The appellant indicated that testimony might be elicited to the effect that after the appellant removed items from the church in Grafton, he drove in the company of several other youths to Wheeling, where property was removed from another building and taken to Ohio. The appellant then drove to several other locations before arriving in Kentucky, where some of the items were sold at an antique show.

The appellant moved *in limine* to exclude "possible testimony ... that there will be other buildings that may have been broken into ... along the interstate in Kentucky,

Ohio." The appellant argued that "no police reports or any official documentation" such as arrest records were known to exist substantiating that these crimes ever occurred. The appellant contended that such evidence would prejudice the defendant and would not fall under an exception to Rule 404(b) "because this would have occurred *after* the incident here in Grafton and Taylor County."

The prosecutor responded that he was not aware of any criminal acts on the part of the defendant after leaving the church in Grafton. In referring to the appellant's removal of items from a building in Wheeling later the same day, the prosecutor stated that "To this day I never assumed that was a bad act." The circuit court granted the motion *in limine,* holding that "[t]he State will not elicit any evidence relative to other crimes or offenses[.]"

During the trial, the circuit court held an *in camera* hearing wherein the prosecutor indicated that Grace Ramey would testify against the appellant. The prosecutor stated in that hearing that "It's possible that the State is intending to show that [the appellant,] Mr. Zacks, along with Mr. & Mrs. Ramey, committed prior bad acts along the same line as acts committed here in Taylor County. It was an ongoing relationship that they had." The prosecutor asked that the circuit court allow the admission of this evidence of collateral crimes.

The appellant objected to the admission of the evidence under Rule 404(b), and again argued that there were no police reports or arrest records to verify that the other crimes occurred. Essentially, the appellant argued that the evidence should be excluded because "the testimony of Mrs. Ramey is unsubstantiated at this point."

The circuit court ruled that the evidence could be introduced. The court indicated that:

> tunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial .if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

**2.** Rule 404(b) [1994] of the *West Virginia Rules of Evidence* states:

> (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, oppor-

[i]n the event that they show a pattern of conduct which has been on going, why, the Court would allow such testimony.... In other words up to this point it would appear that the State's case is based upon the Rameys coming to Taylor County and setting up certain properties for larceny— and then calling Mr. Zacks to come in and help them gather the material and take them and dispose of them. And if the State has evidence of a prior relationship to this extent, why, then I will allow that.

Grace Ramey testified that she was unemployed, and to make money she "just rode around with Phillip and Dan [the appellant] and we cased houses and stole things out of them." Mrs. Ramey testified that she and her husband Phillip had been "in business" with the appellant for several years and, at an undisclosed time, had done things such as steal property from houses in Point Pleasant, West Virginia and Gallipolis, Ohio.

During cross-examination, Mrs. Ramey testified that she had received no "deals" or "promises" for her testimony. The appellant then elicited testimony that Mrs. Ramey gave a statement to the police about "a number of houses that ended up getting burglared [sic] here and in other states and that property was taken across state lines on a fairly frequent basis." The questions from the appellant brought out that in return for giving that statement, Mrs. Ramey had received a grant of "use" immunity from the United States's Attorney's Office for the Northern District of West Virginia.

On re-direct examination, the prosecutor asked Mrs. Ramey questions that clarified that she had made no "deals" to avoid prosecution for any offense under state, rather than federal, law. The prosecutor then asked questions as to why Mrs. Ramey had received immunity from the federal government. She testified that the appellant had participated with the Rameys in crimes in Ohio, Kentucky, and Indiana (where they took "stuff out of the cemetery"). In return for a statement about these other crimes, she had asked for and received use immunity by a federal prosecutor.

The appellant argues first that the prosecution failed to give notice that it was going to introduce evidence other unrelated crimes.

The State counters that Rule 404(b) states that "*upon request of the accused,* the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial ." (Emphasis added). The State argues that it was under no duty to provide notice of Mrs. Ramey's testimony of prior bad acts because no request for 404(b) evidence was ever made by the appellant.

The appellant takes the position that the prosecution still violated the "spirit" of the notice provision of Rule 404(b) because, in response to the appellant's motion *in limine* on Rule 404(b) evidence, the prosecution denied having any such evidence and denied its intention to use any such information. The notice provision of Rule 404(b) "is intended to reduce surprise and promote early resolution on the issue of admissibility." *Federal Advisory Committee's Notes to 1991 Amendment.* However, after reviewing the record, we conclude that the prosecutor did not deny an intent to use *any* collateral crime evidence, merely the evidence of crimes that may have occurred shortly after the theft of Mrs. Foley's property from the church.

█ The State also points out that, during the trial, the prosecution did notify the defendant of its intention to introduce evidence of other crimes by the appellant. Counsel for the appellant did not object to the relevance or prejudicial impact of the unspecified collateral crimes, but rather that "the State has not provided any verification regarding police reports or arrests regarding those prior bad acts—so the testimony of Mrs. Ramey is unsubstantiated on this point."

█ "Courts have held that corroboration of 404(b) evidence of other crimes is not required." *United States v. Bailey,* 990 F.2d 119, 123 (4th Cir.1993). Furthermore, "A jury is free to ... disbelieve the testimony of the plea bargainer, but the plea bargain itself does not make 404(b) evidence unreliable." *Id.* Thus, we believe that the trial court was justified in allowing Mrs. Ramey's testimony despite a lack of corroboration.

■ The second argument by the appellant is that the prosecution failed to alert the circuit court to the nature of the collateral crimes evidence and the intended purpose for its introduction. In Syllabus Point 1 of *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994), we stated that:

When offering evidence under Rule 404(b) of the West Virginia Rules of Evidence, the prosecution is required to identify the specific purpose for which the evidence is being offered and the jury must be instructed to limit its consideration of the evidence to only that purpose. It is not sufficient for the prosecution or the trial court merely to cite or mention the litany of possible uses listed in Rule 404(b). The specific and precise purpose for which the evidence is offered must clearly be shown from the record and that purpose alone must be told to the jury in the trial court's instruction.

The State, however, contends that the appellant did not object or make any argument suggesting that the State detail with particularity the specific acts it intended to prove, nor the reasons for introducing the evidence. More importantly, the record reveals that the purpose for introducing the evidence was apparent. The comments by the trial court indicate that the relevance of the testimony was to counter the appellant's claims that he had acted in "good faith" in reliance on the Ramey's assertions that they owned the property contained in Mrs. Foley's church and Mr. Glenn's house.

Furthermore, the appellant requested and obtained a cautionary jury instruction on Mrs. Ramey's testimony. The jury was instructed that Mrs. Ramey's uncorroborated testimony should be approached "with care and caution," and instructed that the appellant was not on trial for the crimes alluded to by Mrs. Ramey. The jury was allowed to consider the evidence "only for the purpose of determining whether the State has proven and established the motive and intent of the Defendant."

■ The third argument proffered by the appellant is that the trial court failed to perform its traditional and necessary "gatekeeper function" under *State v. McGinnis*, where we stated at Syllabus Point 2 that:

Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986)[, *overruled on other grounds, State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990) ]. After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

The appellant argues that the *in camera* hearing held by the trial court on the evidence of the alleged other crimes was inadequate; that the trial court failed to consider the relevance of the evidence (governed by Rules 401 and 402); and failed to balance the probative value of the evidence against its prejudicial effect (governed by Rule 403).

The State concedes that the circuit court's *in camera* discussion concerning Mrs. Ramey's possible testimony "does not live up to appellate counsel's expectations." However, the State argues that sufficient evidence and argument was proffered by the prosecutor, and sufficient findings were made by the

circuit court, to find that the evidence was admissible under Rule 404(b) and *McGinnis*.

After reviewing the record, we hold that a sufficient record was created in the circuit court to support the admission of Mrs. Ramey's testimony of collateral crimes.[3] Although during the *in camera* hearing the trial court did not specifically refer to Rules 401, 402 and 403 of the *West Virginia Rules of Evidence*, the circuit court did consider the relevancy and effect of Mrs. Ramey's testimony.

We are satisfied with the circuit court's conclusion that the evidence could be admitted for the purpose of showing the appellant's knowledge of the Rameys' criminal past, and showing that it was unreasonable for the appellant to claim he relied upon the Rameys' assertions that they owned the personal property contained in Mrs. Foley's church and Mr. Glenn's house. The relevance and probative effect of the evidence was clear. Furthermore, the circuit court met the requirements of *McGinnis* by instructing the jury to consider the evidence for the limited purposes of motive and intent.

Lastly, the appellant argues that the circuit court erred in allowing the prosecution to admit an unnecessary quantity of extrinsic bad acts evidence, a practice sometimes referred to as "shotgunning." We discussed shotgunning in *State v. Thomas*, 157 W.Va. 640, 656, 203 S.E.2d 445, 456 (1974):

> "A prudent prosecutor limits himself to what is needed to prove the charge in the indictment. In the process of proving the charge, other offenses may sometimes come to light incidentally, but when the prosecution devotes excessive trial time to this type of 'background' material, it runs the risk of trespassing into the impermissible area and jeopardizing any resulting conviction." *United States v. Mastrototaro*, 455 F.2d 802, 804 (4th Cir.1972).
>
> Certainly, the indiscriminate receipt of such evidence in volume and scope can predispose the minds of the jurors to believe the accused guilty of the specific

crime by showing him guilty or charged with other crimes. Moreover, the admissibility of the collateral crimes raises collateral issues which compel the defendant to meet charges of which the indictment gives him no information; which confuse his strategy of defense; and which raise such a variety of issues that the jury's attention is diverted from the charge immediately before it. This result, obviously prejudicial, is to be avoided by prompt objection on the part of the defense and close attention and control by the trial court to insure that an accused receives a fair trial when he is being subjected to zealous prosecution.

The appellant contends that after the prosecution had developed evidence that Mrs. Ramey had committed other breaking and entering offenses with the appellant, testimony of possible "grave robbing" and the commission of other unspecified crimes became an overkill.

The State, however, contends that the appellant did not object to the evidence on the ground of excessiveness. The prosecutor originally sought to admit a limited amount evidence of collateral crimes to show intent, and the unreasonableness of the appellant's defense. However, on cross-examination, the defense made much of Grace Ramey's immunity from federal authorities to impeach her credibility, thus creating an additional issue to which the additional collateral crimes evidence was relevant. The limited detail of the other crimes was elicited to explain Mrs. Ramey's insistence on use-immunity from the federal authorities in return for her statement regarding her prior interstate criminal relationship with the appellant.

We agree with the State, and believe that the appellant failed to preserve his objection on this point. We have held that:

> An objection to an adverse ruling on a motion in limine to bar evidence at trial will preserve the point, even though no objection was made at the time the evi-

---

3. While the circuit court did not comply with the technical mandate of *McGinnis*, we have previously supported the admission of bad acts evidence under Rule 404(b) in cases where the circuit court's actions, though not "ideal," were adequate to show it has lived up to the spirit of *McGinnis*. *See State v. Phelps*, 197 W.Va. 713, 478 S.E.2d 563, 569 (1996) (*per curiam* ); *State v. McGhee*, 193 W.Va. 164, 170, 455 S.E.2d 533, 539 (1995) (*per curiam* ).

dence was offered, *unless there has been a significant change in the basis for admitting the evidence.*

Syllabus Point 1, *Wimer v. Hinkle*, 180 W.Va. 660, 379 S.E.2d 383 (1989) (emphasis added). The record supports the State's contention that the appellant injected a significant new reason for the admission of the collateral crimes evidence into the trial. We therefore hold that the appellant's earlier objections and motions *in limine* failed to preserve this argument for appeal.

Accordingly, we find no error in the circuit court's admission of the evidence of other crimes by the defendant.

### B.

### *Amendment of the Indictment*

 Count I of the appellant's indictment was entitled "ENTERING WITHOUT BREAKING." However, the text of the indictment charges the appellant with "the offense of 'Breaking and Entering' by unlawfully and feloniously breaking and entering an unoccupied house owned by James H. Glenn, Jr."

Two days before trial, the prosecutor filed a motion to amend the indictment. The prosecutor contended that the indictment erroneously stated breaking and entering, and that it should have read that the appellant "did Enter Without Breaking, by unlawfully and feloniously enter[ing] without breaking an unoccupied home." The circuit court granted the motion to amend the indictment on the first day of trial.

The appellant contends that the circuit court erred in allowing the indictment to be amended. The appellant alleges that the amendment violates the Grand Jury Clause of Art. III, § 4 of the *West Virginia Constitution*, which gives a defendant the right "to be tried only on felony offenses for which a grand jury has returned an indictment." Syllabus Point 1, *State v. Adams*, 193 W.Va. 277, 456 S.E.2d 4 (1995).

 In *Adams*, we set forth the controlling analysis for reviewing an amendment to an indictment, and held that a change in substance as opposed to a change in form would constitute a forbidden amendment. In Syllabus Point 3, we stated:

Any substantial amendment, direct or indirect, of an indictment must be resubmitted to the grand jury. An "amendment of form" which does not require resubmission of an indictment to the grand jury occurs when the defendant is not misled in any sense, is not subjected to any added burden of proof, and is not otherwise prejudiced.

We stated in *Adams* that an amendment to an indictment alters the substance of the charge, and is therefore prohibited, "if it changes 'the pleading description of the criminal act, the mens rea accompanying that act, or the consequences of that act.'" 193 W.Va. at 283, 456 S.E.2d at 10 (citation omitted).

*W.Va.Code*, 61-3-12 [1923] provides that a felony may be committed by breaking and entering, or entering without breaking. *W.Va.Code*, 61-3-12 [1923] states, in pertinent part:

If any person shall, at any time, break and enter, or shall enter without breaking, any ... building, other than a dwelling house ... with intent to commit a felony or any larceny, he shall be deemed guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than one nor more than ten years....

The appellant argues that the grand jury had the means to state the crime as one of entering without breaking, but instead limited its consideration of the case to a crime in which a "breaking" had occurred. Therefore, the prosecution's amendment of the indictment usurped the grand jury's authority. The appellant also contends that the defenses to breaking and entering are different than the defense for entering without breaking, and that by amending the indictment, the prosecution lowered the prosecution's level of proof needed for a conviction. Accordingly, the appellant takes the position that the amendment was substantive, and should have been prohibited by the circuit court.

The State argues that there is no distinction in punishment depending upon whether the building was broken into or merely entered—proof of entry (with or without breaking) with intent to commit a felony or larceny is all the proof that is required to prove the offense described in the statute. The State points out that the title of the statute is "Entry of Building Other Than Dwelling,"

suggesting that entry is all that is required under the statute. The State therefore argues that the "amendment" merely struck surplusage from the indictment without materially changing the nature of the offense charged. We agree with the State's position.

An unnecessary allegation in an indictment is surplusage and may be stricken or ignored. *See, e.g., State ex rel. Thompson v. Watkins,* 200 W.Va. 214, 219, 488 S.E.2d 894, 899 (1997) (*per curiam*). "Immaterial, unnecessary and harmless averments, which might be omitted without affecting the charge in an indictment against the accused and which need not be proved, may be properly considered and rejected as surplusage." Syllabus Point 1, *State v. McGraw,* 140 W.Va. 547, 85 S.E.2d 849 (1955), *modified on other grounds by* Syllabus Point 2, *State v. Adams,* 193 W.Va. 277, 456 S.E.2d 4 (1995).

The offense of entering without breaking, while distinct from breaking and entering, is merely a lesser-included offense. *State v. Reedy,* 177 W.Va. 406, 416, 352 S.E.2d 158, 168 (1986). Indeed, the amendment of an indictment to charge a lesser-included offense is a mere "redaction" or "change in form rather than substance." *See, e.g., State v. Johnson,* 197 W.Va. 575, 579, 476 S.E.2d 522, 526 (1996).

In this case, the State had to prove in its case-in-chief that the appellant entered Mr. Glenn's house with the intent to commit larceny, regardless of whether the defendant broke and entered or entered without breaking. *W.Va.Code,* 61–3–12 makes no practical distinction between the two offenses. Had the State gone to trial on the original indictment, it could have announced at the beginning, or even the end, of trial that it was going to make no attempt to prove a "breaking" occurred, and it would then have been within its rights to prove any lesser offense included within the elements originally charged.

Accordingly, we conclude that the trial court properly allowed the prosecutor to amend the indictment.

### III.

As set forth above, the appellant's conviction is affirmed.[4]

Affirmed.

Justice McGRAW did not participate.

---

4. The appellant also asserts that three other errors occurred during the trial that were not objected to, but had the effect of depriving the defendant of a fair trial. The appellant contends the Court should review the errors under the "plain error" doctrine. We disagree.

First, appellate counsel contends that the appellant's trial defense was geared towards proving that the defendant entered Mrs. Foley's church and Mr. Glenn's house in "good faith," thus negating any felonious intent to commit larceny. Therefore, when the appellant's trial counsel failed to offer a "good faith" jury instruction, the appellant contends that the trial court should have recognized the oversight and created the instruction *sua sponte.* We disagree. Rule 30 of the *West Virginia Rules of Criminal Procedure* states that "any appellate court may, in the interest of justice, notice plain error in the giving or refusal to give an instruction[.]" Because no instruction was offered, there was no instruction for the circuit court to give or refuse; accordingly, we do not believe the appellant can claim plain error. Furthermore, we agree with the State's position that the appellant may have intentionally not offered such an instruction, as part of his trial strategy.

Second, the appellant contends that the fruits of the search of the U–Haul loaded with Mr. Glenn's property in Harrison County should have been suppressed. The U–Haul was searched by a Taylor County police officer. The appellant argues that Rule 41(c) of the *West Virginia Rules of Criminal Procedure* requires a search warrant to be executed by a peace officer of the county or municipality where the property is located, and the failure to comply with this rule should result in the exclusion of any evidence discovered in the search. The State argues that there is no reason why the Fourth Amendment exclusionary rule should apply to Rule 41(c). Furthermore, the State points out that, on the limited record of this issue, an inference can be drawn that the warrant was actually executed by a Harrison County police officer, with the Taylor County police officer assisting. We decline to use such a cursory record to address this issue.

Third, the appellant argues that defense counsel failed to move, and the trial court failed on its own, to strike for cause certain members of the jury who should have been disqualified because of their association with the part-time assistant prosecuting attorney, who also maintained a private law practice, and their association with one of the victims. However, because no objection

was made, the record is unclear whether any of these questionable members of the jury panel ever served on the jury. We therefore decline to address this issue as well.