F I L E D
United States Court of Appeals
Tenth Circuit

FEB 26 2003

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DAISY AGUILAR, a/k/a Eva Daisy
Aguilar, Eva Alvarado-Mendoza, Eva
Daisy Mendoza and Eva Daisy
Mendoza-Deaguil,

    Defendant - Appellant.

No. 01-4237
(D.C. No. 2:01-CR-239-01-K)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **McKAY**, and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant Eva Daisy Aguilar ("Aguilar") was indicted on one count of possession of ammunition by a restricted person in violation of 18 U.S.C. § 922(g)(1) and one count of aiding and abetting an individual to knowingly enter into a marriage for the purpose of evading immigration laws in violation of 8 U.S.C. § 1325(c) and 18 U.S.C. § 2. A jury found Aguilar guilty of aiding and abetting marriage fraud and not guilty of possession of ammunition by a restricted person. Aguilar appeals, arguing that the district court improperly admitted evidence of prior fraudulent marriage arrangements in violation of Rules 403 and 404(b) of the Federal Rules of Evidence. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms**.

I.     BACKGROUND

Aguilar made arrangements for Kimberly Reeves ("Reeves") to marry Jesus Amaya ("Amaya") in exchange for $5000, rent and utilities, and payment for a divorce which would occur eighteen months after the marriage. Reeves was aware Amaya was in the United States illegally and needed to get married before April 30th for immigration purposes.[1] Prior to the wedding, Reeves and Amaya completed INS paperwork, with Aguilar's assistance, and Reeves tried on wedding dresses at Aguilar's house. Aguilar told Reeves that she and Amaya

_____

[1]Under a Presidential proclamation issued in December 2000, an illegal alien could obtain resident alien status if he or she lawfully married a United States citizen before April 30, 2001.

would have to live together for thirty days and, afterwards, Amaya would need to keep some belongings at the apartment and stay the night on occasion. Two days after meeting, Reeves and Amaya were married in Las Vegas, Nevada. Shortly after the wedding, Reeves wanted to "back out" of the marriage. After an argument with her parents, the police were contacted. Reeves falsely reported to the police that she had been kidnapped. During the kidnapping investigation, police discovered that Aguilar had arranged for the marriage of Reeves and Amaya.

Aguilar and four others were indicted for aiding and abetting an individual to knowingly enter into a marriage for the purpose of evading immigration laws. One week before trial, the government filed a notice of intent to rely upon Rule 404(b) evidence. An amended and supplemented notice of intent was submitted on the Friday before trial. In the notices, the government announced its intention to introduce evidence through the testimony of at least five witnesses that Aguilar advised the witnesses about false marriage arrangements, attempted to arrange at least five fraudulent marriages in order to evade immigration laws, and solicited one witness to provide potential brides for false marriages. In addition, the government intended to introduce evidence that Aguilar previously aided and abetted illegal aliens to enter the United States and that Aguilar had illegally possessed other firearms and ammunition not charged in the indictment.

At trial, defense counsel objected to the notices on the grounds that they were untimely, unspecific, and that the evidence sought to be presented was more prejudicial than probative. The government argued that the evidence of the prior fraudulent marriage arrangements was offered to show a common scheme or plan. The district court overruled Aguilar's objection in part: it admitted the evidence of Aguilar's prior fraudulent marriage arrangements but excluded evidence concerning the aiding and abetting and the firearm and ammunition possession as more prejudicial than probative.

II.    DISCUSSION

A.    Rule 404(b) Notice

Aguilar contends the district court should have excluded the evidence of prior fraudulent marriage arrangements because the notice of intent was untimely and, therefore, prejudicial. Rule 404(b)'s notice provision states that "upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." Fed. R. Evid. 404(b). Thus, according to Rule 404(b), pretrial notice is required only when the defense requests such advance notice. *United States v. Tuesta-Toro*, 29 F.3d 771, 775 (1st Cir. 1994) (stating defense must present a timely request to "alert the prosecution that the defense is invoking its

-4-

specific right to pretrial notification" under 404(b)); *United States v. Barnes*, 49 F.3d 1144, 1148 (6th Cir. 1995) (concluding that Rule 404(b) places an initial duty on the defense to request the provision of prior bad acts evidence from the prosecutor); *United States v. Vega*, 188 F.3d 1150, 1154 (9th Cir. 1999) (noting that the notice requirement is not triggered until a request is made by the defendant).

In this case, Aguilar did not request reasonable pretrial notice of the government's intention to rely on prior bad acts evidence during trial. Thus, the government acted appropriately under Rule 404(b) when it submitted its notice of intent one week before trial because it was not obligated to provide pretrial notice. Because there was no violation of Rule 404(b) and Aguilar's counsel declined to seek a continuance to deal with the evidence, there was no error that resulted in prejudice.

Aguilar further objected that the pretrial notice filed by the government was not specific as to the witnesses and evidence to be admitted. Rule 404(b) requires the prosecution to disclose "the general nature" of evidence intended to be introduced. Fed. R. Evid. 404(b). Here, the government apprised Aguilar of the names of the witnesses and the content of their testimony. The supplemental notice specified in further detail the testimony of certain witnesses. The notices

were more than sufficient to provide the "general nature" of evidence sought to be admitted by the government under Rule 404(b).

B.    Admission under Rule 404(b)

Aguilar argues that the district court improperly admitted evidence of prior fraudulent marriage arrangements under Rule 404(b) of the Federal Rules of Evidence. A district court's decision to admit prior bad acts evidence under Rule 404(b) is reviewed for an abuse of discretion. *United States v. Viefhaus*, 168 F.3d 392, 397 (10th Cir. 1999). Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

Fed. R. Evid. 404(b). This court has set forth the following four requirements for admitting evidence under Rule 404(b):

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it is admitted.

*United States v. Roberts*, 185 F.3d 1125, 1141 (10th Cir. 1999) (citation omitted).

First, Aguilar alleges the evidence of prior fraudulent marriage arrangements was not offered for a proper purpose. The government offered the evidence to establish a common scheme or plan of arranging fraudulent marriages to evade immigration laws. This court has acknowledged that showing a common scheme or plan to demonstrate intent to commit a crime is a proper purpose under Rule 404(b). *See id.* Evidence that Aguilar made arrangements for fraudulent marriages on previous occasions demonstrated Aguilar conducted an ongoing venture to assist illegal aliens to enter false marriages in order to gain legal immigration status. In turn, Aguilar's participation in the operation or scheme showed she intended a fraudulent marriage to take place between Amaya and Reeves. Therefore, the prior bad acts evidence was offered for the proper purpose of showing intent to aid and abet through a common scheme or plan.

Second, Aguilar contends the other marriage arrangements were not relevant to the issue of whether the marriage between Amaya and Reeves was legitimate. Evidence is relevant when it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Specifically, prior bad acts evidence is relevant to show an essential element of the charged offense. *United States v. Shumway*, 112 F.3d 1413, 1421-22 (10th Cir. 1997). To be liable for aiding and abetting, a defendant must willfully

associate with a criminal venture and intend the venture succeed by taking action. *United States v. Hanson*, 41 F.3d 580, 582-83 (10th Cir. 1994).

Here, the prior acts were relevant to demonstrate Aguilar intended the arrangements to result in marriage, albeit fraudulent, between Amaya and Reeves. Furthermore, evidence Aguilar engaged in prior fraudulent marriage arrangements was relevant to refute Aguilar's defense theory that a legitimate marriage took place.

Third, Aguilar essentially alleges that the testimony concerning prior fraudulent marriage arrangements was more prejudicial than probative because the evidence led the jury to convict on the basis of the prior arrangements instead of the evidence concerning the marriage at issue. Rule 403 permits a district court to exclude evidence if its probative value is substantially outweighed by unfair prejudice. Fed. R. Evid. 403.

Witnesses, including Reeves, testified as to Aguilar's actions in arranging a fraudulent marriage between Reeves and Amaya. Amaya, however, testified that the marriage was legitimate. Because there was conflicting testimony, the evidence of Aguilar's prior fraudulent marriage arrangements was probative as to whether the marriage between Amaya and Reeves was also fraudulent.

In addition, the evidence provided context for the jury to determine whether the marriage at issue was legitimate. The offered testimony revealed that Aguilar

was to pay $3000-$5000 for legal citizens to marry illegal aliens, that Aguilar provided INS paperwork, that Aguilar arranged meetings to introduce prospective spouses, that Aguilar informed certain parties that the wedding needed to take place before April 30th to meet immigration deadlines, and that Aguilar had wedding dresses available. Because the testimony was similar to evidence the jury had before it, there was minimal risk that the jury would be distracted from the issues at trial. Although prejudicial, the evidence was more probative in light of the allegations.

Aguilar further alleges the trial court failed to conduct any analysis under Rule 403. However, this court has previously acknowledged that implicit Rule 403 determinations are not improper. *United States v. Lazcano-Villalobos*, 175 F.3d 838, 846 (10th Cir. 1999). In *Lazcano-Villalobos*, this court determined that the district court made an implicit Rule 403 ruling by admitting the evidence under Rule 404(b) in light of the defendant's argument that the evidence was more prejudicial than probative. *Id.* at 847. Also, in *United States v. Wilson*, 107 F.3d 774 (10th Cir. 1997), this court concluded that the district court implicitly conducted a Rule 403 analysis because the court had ruled the evidence admissible under Rule 404(b). *Id.* at 783.

Similarly, Aguilar's defense counsel specifically argued that the evidence of the prior marriage arrangements was more prejudicial than probative. The

district court considered Aguilar's argument and excluded some of the prior bad acts evidence, i.e. aiding and abetting and possession of firearms and ammunition, as more prejudicial than probative. Because the district court admitted the evidence of Aguilar's prior fraudulent marriage arrangements under Rule 404(b) after defense counsel raised the Rule 403 argument, this court concludes that the district court made an implicit Rule 403 determination.

Accordingly, this court concludes that the district court complied with the four requirements for admitting Rule 404(b) evidence when it permitted testimony concerning Aguilar's prior fraudulent marriage arrangements.[2] Thus, the district court did not abuse its discretion.

III.   CONCLUSION

Because the evidence of prior fraudulent marriage arrangements was offered for a proper purpose, relevant, more probative than prejudicial, and coupled with a limiting instruction, the district court did not abuse its discretion in admitting the evidence under Rule 404(b) of the Federal Rules of Evidence. In addition, the notice of intent was sufficient under Rule 404(b) because Aguilar

---

[2]Aguilar concedes that a limiting instruction was provided to the jury.

-10-

failed to request reasonable pretrial notification from the government.

Accordingly, we **AFFIRM** Aguilar's conviction.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge