647 S.E.2d 539

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Jeremiah David MONGOLD, Defendant Below, Appellant.**

No. 33222.

Supreme Court of Appeals of West Virginia.

Submitted May 22, 2007.

Decided June 6, 2007.

Concurring Opinion of Justice Starcher June 29, 2007.

Lawrence E. Sherman, Jr., Romney, for Appellant.

Darrell V. McGraw, Jr., Attorney General, James W. Wegman, Assistant Attorney General, Charleston, for Appellee.

DAVIS, Chief Justice:

Jeremiah David Mongold (hereinafter referred to as "Mr. Mongold") appeals an order of the Circuit Court of Hampshire County

convicting him of the crime of death of a child by a parent, guardian or custodian by child abuse. The circuit court sentenced Mr. Mongold to a definite term of imprisonment of forty years. Here, Mr. Mongold has made the following assignments of error: (1) the admission of evidence of a prior child abuse incident, (2) the admission of evidence concerning the reason for his loss of employment, and (3) the admission of autopsy photos of the victim. After a thorough review of the record, briefs and the applicable laws, we affirm the conviction and sentence of Mr. Mongold.

## I.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Mongold resided in Shanks, West Virginia, with his wife, Shiloh Aumock, and her two children, five-year-old Logan and two-year-old Hannah.[1] According to the testimony of Mr. Mongold, on the morning of May 16, 2004, he got out of bed and provided breakfast for Logan and Hannah.[2] After breakfast, Mr. Mongold began playing with the children. One of the games they played was called "airplane." This game required Mr. Mongold to lie on his back and place one of the children on his raised legs and, while holding the child's hands, twirl the child in the air. Mr. Mongold played airplane with Logan first. Then he began playing with Hannah. He played with Hannah for about four minutes. According to Mr. Mongold, after he played airplane with Hannah, he attempted to pick her up and noticed that she was limp and felt like jello. Mr. Mongold immediately called 911 for help.

In response to the 911 call, two emergency medical technicians (hereinafter referred to as "EMTs") arrived at the home and found Hannah lying on the kitchen floor. The EMTs observed that Hannah was barely breathing, her skin was turning blue, and two bruises were over her right eye. Within minutes of observing Hannah's condition, the EMTs placed her in the ambulance and began transportation to a local hospital. How-

ever, after a further examination of Hannah in the ambulance, the EMTs determined that her condition warranted helicopter transportation to a better equipped hospital in Maryland. Consequently, the ambulance proceeded to a local fire station to connect with the helicopter. While en route to the fire station, arrangements were also made by the EMTs for a paramedic to rendevous with the ambulance. The paramedic reached the ambulance and began examining Hannah while still en route to the fire station. The paramedic determined that Hannah's symptoms suggested that she had a head injury.

Once the ambulance arrived at the fire station, Hannah was placed into a helicopter. She was flown to Cumberland Memorial Hospital, in Cumberland, Maryland. While at the hospital, it was determined that Hannah suffered from brain swelling and that she had blood on the surface of her skull. As a result of the severity of Hannah's head injuries, she was transported to Johns Hopkins Hospital in Baltimore, Maryland.

At Johns Hopkins Hospital, tests revealed that Hannah suffered from either asphyxiation/strangulation or severe head trauma. Despite efforts to resolve her brain injuries, Hannah died two days later. Subsequent to her death, an autopsy was performed on Hannah. The autopsy revealed that Hannah had sustained four blunt impacts to her head and that those injuries caused her death.

On September 7, 2004, a grand jury returned a one-count indictment against Mr. Mongold, charging him with causing Hannah's death by a parent, guardian or custodian by child abuse. The case was tried before a jury in March of 2005. During the trial, Mr. Mongold testified on his own behalf. Mr. Mongold's defense was that Hannah's injuries may have been caused when the family dog knocked her down on May 15, or when she fell from the deck of the home on the same day. Alternatively, Mr. Mongold suggested that the injuries to Hannah occurred while he played "airplane" with her on May 16. The State's evidence indicated that the injuries sustained by Hannah could

---

1. Hannah and Logan were Mr. Mongold's step-children.

2. The record indicates that Shiloh Aumock was at work at the time in question.

not have been caused by being knocked down by a dog, falling from the deck of the home, or while playing the game of "airplane." The jury rejected Mr. Mongold's defense and convicted him. Subsequent to the conviction, the trial court sentenced Mr. Mongold to a definite term of imprisonment of forty years. All post-trial motions were denied. Mr. Mongold then filed this appeal.

## II.

## STANDARD OF REVIEW

■ Three issues are presented in this appeal that generally involve the admission of evidence to which Mr. Mongold objected. We have held as a general rule that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. pt. 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998). *See also State v. Guthrie*, 194 W.Va. 657, 680, 461 S.E.2d 163, 186 (1995) ("[M]ost rulings of a trial court regarding the admission of evidence are reviewed under an abuse of discretion standard.... [A]n appellate court reviews *de novo* the legal analysis underlying a trial court's decision."). We will provide additional review standards as they apply to each specific issue presented.

## III.

## DISCUSSION

### A. Admission of Evidence of a Prior Child Abuse Incident

■ The first issue raised by Mr. Mongold involves the State's cross-examination of him relating to a prior child abuse incident. The State was permitted to introduce the evidence under Rule 404(b) [3] of the West Virginia Rules of Evidence.[4] In *State v. LaRock*,

196 W.Va. 294, 470 S.E.2d 613 (1996), this Court explained the standard of review for a Rule 404(b) issue as follows:

The standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.

196 W.Va. at 310–11, 470 S.E.2d at 629–30 (footnote omitted).

■ In Syllabus point two of *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994), this Court outlined the procedure that trial courts must follow in determining whether to admit Rule 404(b) evidence:

Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an in camera hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then de-

---

**3.** Rule 404(b) states the following:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case

shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

**4.** The State initially sought to introduce the evidence pursuant to Rule 404(a)(1). The trial court found that the evidence was inadmissible under that rule.

termine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

Finally, in Syllabus point one of *McGinnis* we addressed the usage of Rule 404(b) evidence as follows:

> When offering evidence under Rule 404(b) of the West Virginia Rules of Evidence, the prosecution is required to identify the specific purpose for which the evidence is being offered and the jury must be instructed to limit its consideration of the evidence to only that purpose. It is not sufficient for the prosecution or the trial court merely to cite or mention the litany of possible uses listed in Rule 404(b). The specific and precise purpose for which the evidence is offered must clearly be shown from the record and that purpose alone must be told to the jury in the trial court's instruction.

193 W.Va. 147, 455 S.E.2d 516. In our review of this case we are satisfied that the trial court complied with the requirements of *McGinnis.*

During Mr. Mongold's case-in-chief, he presented witnesses who testified as to his overall good relationship with children and that he was not a violent person. Additionally, during direct examination of Mr. Mongold and through the testimony of other witnesses, evidence was presented which suggested that Hannah's injuries could have been caused accidentally while, among other things, she was playing the game of "airplane." In an effort to rebut Mr. Mongold's evidence regarding his theories of how Han-

nah's injuries could have occurred accidentally, the State sought to introduce evidence of an incident involving a five-year-old child that occurred on May 8, 2002. On the date in question, Mr. Mongold "held the child up against the wall by the throat, causing the child to bleed and become unconscious for four or five seconds."

The trial court held an in camera hearing to decide whether the State would be allowed to question Mr. Mongold about the prior child abuse incident. During the in camera proceeding, the trial court took testimony from the child's mother. The mother testified that she and Mr. Mongold had gotten into an argument and that he shoved her through a closet door.[5] The child attempted to assist his mother. Mr. Mongold then grabbed the child by the throat and pinned him against a wall. The mother intervened and wrestled with Mr. Mongold. During the altercation, the child was pinned between Mr. Mongold's legs. As a result of pressure being applied to the child's head by Mr. Mongold's legs, "blood vessels in one of [the child's] eyes were broken, he had a small amount of blood inside his ear and he ... urinated [on] himself."[6] The trial court also considered evidence showing that Mr. Mongold had been criminally charged with respect to that incident and that he eventually pled guilty to charges of domestic battery against the mother and the child.[7] After consideration of the arguments from both parties, the trial court ruled that the State had shown by a preponderance of the evidence that the prior incident did occur. The trial court concluded that the evidence was relevant "to show that this was not an accident and that it was intentional," as argued by the State. *See United States v. Sanders,* 343 F.3d 511, 518 (5th Cir.2003) ("[I]t has been established that the government offered the evidence to prove intent and refute [the defendant's] claim of mistake or accident. These purposes are permissible under [Rule] 404(b)."). It was also found by the trial court

---

**5.** The mother of the child was Mr. Mongold's former girlfriend.

**6.** The trial court did *not* allow the mother of the child testify about the incident to the jury.

**7.** A felony child abuse charge was originally filed against Mr. Mongold. That charge was dropped in exchange for the guilty plea to domestic battery.

"that the probable value [of the evidence] would, in fact, outweigh the prejudicial effect[.]"

After the in camera hearing, the State was permitted to cross-examine Mr. Mongold about the prior child abuse incident.[8] The trial court gave a limiting instruction on how the jury should receive the evidence. Additionally, during the charge to the jury, the trial court again instructed the jury that evidence of Mr. Mongold's past "is not admitted as proof of [his] guilt on the present charge .... This evidence is admitted ... only for the purpose of determining whether the ... State ... has proven and established intent in absence of accident."

Very clearly, the record demonstrates that the trial court complied with *McGinnis* by finding that the prior child abuse incident was admissible to show intent and a lack of accident. *See State v. Scott*, 206 W.Va. 158, 166, 522 S.E.2d 626, 634 (1999) (allowing Rule 404(b) evidence to show lack of accident); *State v. Bonham*, 184 W.Va. 555, 559, 401 S.E.2d 901, 905 (1990) (allowing Rule 404(b) evidence to show intent). Even so, Mr. Mongold presents two arguments as to why evidence of the prior child abuse incident should not have been introduced: (1) the lack of pretrial notice and (2) his acquittal of the prior felony child abuse charge. We now address both arguments.

■ **(1) Lack of pretrial notice.** Mr. Mongold contends that the prior child abuse incident should not have been introduced because the State failed to provide pretrial notice of its intent to use such evidence. Mr. Mongold states that, during a pretrial hearing, "the court remarked '... so suffice to say that there are no 404(b) issues[.]' The prosecuting attorney replied: 'None known to me, your honor.'" Here, Mr. Mongold contends that had he known the State intended to use Rule 404(b) evidence, he may have conducted his trial differently. In contrast, the State argues that it did not know that the prior child abuse incident would be relevant until Mr. Mongold presented extensive evidence showing that Hannah's injuries were accidental.

■ Rule 404(b) provides that "upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." Consequently, and under this provision, we hold, Rule 404(b) of the West Virginia Rules of Evidence requires the prosecution in a criminal case to disclose evidence of other crimes, wrongs or acts prior to trial if such disclosure has been requested by the accused; however, upon reasonable notice such evidence may be disclosed for the first time during trial upon a showing of good cause for failure to provide the requested pretrial notice.

■ At the outset we note that Rule 404(b) "place[s] an initial duty on the defense to request the prosecution to furnish 'other crimes' evidence." *United States v. Barnes*, 49 F.3d 1144, 1148 (6th Cir.1995). When no such pretrial request is made, the State is "not obligated to provide pretrial notice." *United States v. Aguilar*, 59 Fed.Appx. 326, 328 (10th Cir.2003). *See also State v. Zacks*, 204 W.Va. 504, 509, 513 S.E.2d 911, 916 (1998) (prosecutor allowed to introduce Rule 404(b) evidence without pretrial notice because defendant failed to make request). An examination of Mr. Mongold's discovery motion reveals that he made the following two relevant requests:

(1) A copy of [his] prior criminal record, if any, as is within the possession, custody or control of the State, or the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the State.

(2) Any evidence of uncharged crimes, wrongs or acts allegedly committed by [him] which the State intends to introduce.

To the extent that the above two requests constitute Rule 404(b) requests, Mr. Mongold has not argued that the State failed to provide the requested information. Instead, Mr. Mongold contends that the pretrial notice requirement was violated because the State indicated prior to trial that there would be no

---

**8.** The jury was not informed of the criminal conviction that resulted from that incident.

Rule 404(b) issues at trial. To support this argument, Mr. Mongold cites to our decision in *State v. Grimm*, 165 W.Va. 547, 270 S.E.2d 173 (1980). Mr. Mongold argues that, under *Grimm*, "non-disclosure by the prosecution is fatal to its case where such non-disclosure is prejudicial." Put simply, Mr. Mongold misinterprets *Grimm*.

In *Grimm* this Court addressed the issue of the State's failure to turn over a document that was requested during discovery. The State did not produce the document, but the State nevertheless introduced it during the trial. We found the non-disclosure to be erroneous. We held in Syllabus point two of *Grimm*:

> When a trial court grants a pre-trial discovery motion requiring the prosecution to disclose evidence in its possession, non-disclosure by the prosecution is fatal to its case where such non-disclosure is prejudicial. The non-disclosure is prejudicial where the defense is surprised on a material issue and where the failure to make the disclosure hampers the preparation and presentation of the defendant's case.

165 W.Va. 547, 270 S.E.2d 173.

The pretrial notice of other crimes evidence required by Rule 404(b), at issue herein, is distinguishable from the prosecution's failure in *Grimm* to produce a requested document. In the instant proceeding, there is no allegation that the State failed to turn over any document to Mr. Mongold. Further, *Grimm* does not address the issue of a statement by the State that it did not know of any Rule 404(b) issues that would be litigated. Therefore, *Grimm* does not support Mr. Mongold's position.[9]

The trial court ruled that the State was not precluded from using evidence of the prior child abuse merely because the State initially believed that no Rule 404(b) evidence would be used. The trial court correctly found that, under Rule 404(b), such evidence was admissible during the trial if good cause was shown. *See United States v. Scholl*, 166 F.3d 964, 976 (9th Cir.1999) ("Although Rule 404(b) requires pretrial disclosure of such evidence, that requirement may be excused 'for good cause shown.' "). The trial court determined that good cause was shown. It was only after Mr. Mongold presented extensive evidence suggesting that Hannah's death could have occurred accidentally while playing the game of "airplane" "that this even became an issue."

To the extent that the State's initial belief that no Rule 404(b) issues would be litigated constituted noncompliance with the rule's pretrial notice requirement, we do not believe the trial court abused its discretion in finding that the State provided good cause for failing to provide pretrial notice. *See United States v. Lopez–Gutierrez*, 83 F.3d 1235, 1241 (10th Cir.1996) ("[W]here Rule 404(b) evidence is offered during trial, as it was in the instant case, the district court may excuse pretrial notice and admit such evidence on good cause shown."); *United States v. Wei*, 862 F.Supp. 1129, 1134 (S.D.N.Y. 1994) ("Evidence sought to be admitted under that rule for which ... pre-trial notice was not given shall be admitted only if good cause is shown to excuse the failure to provide such notice."). The record is clear in showing that Mr. Mongold was made aware of the prior child abuse incident through documents supplied during discovery and during the pretrial hearing. The mere fact that the State initially believed that no Rule 404(b) issues existed should not be the basis for excluding the evidence. *See United States v. Morrison*, No. 96–4956, 1998 WL 17049 (4th Cir. Jan.20, 1998) (permitting government to introduce Rule 404(b) evidence that it initially stated would not be used at trial); *United States v. Holmes*, 111 F.3d 463, 468 (6th Cir.1997) (permitting Rule 404(b) evidence even though "the defense asked the government whether it planned to introduce any evidence under Rule 404(b), and the government responded that it had no plans to do so").

The fact that Rule 404(b) permits notice to occur for the first time at trial, upon a show-

---

9. Mr. Mongold also cited to the decision in *State v. Miller*, 178 W.Va. 618, 363 S.E.2d 504 (1987). However, *Miller* does not apply to the case *sub judice* because it addressed the issue of a prosecutor's failure to provide the defendant with information pertaining to the substance of incriminating oral statements he made to fellow inmates.

ing of good cause, suggests that the rule contemplates situations arising where the State legitimately is unaware of the need for such evidence until *after* the trial begins. "[T]here is no requirement that the State must anticipate a need to disclose such evidence." *Dixon v. State*, 712 N.E.2d 1086, 1092 (Ind.Ct.App.1999). *See also United States v. Makki*, No. 06–20324, 2007 WL 781821 (E.D.Mich. Mar.13, 2007) (after denying defendant's request for notice of Rule 404(b) evidence because government stated it would not introduce such evidence, trial court warned, "the Government is hereby cautioned that it will need 'good cause' to be able to introduce 404(b) evidence at trial if Defendant is not provided reasonable notice of the general nature of any such evidence at least two weeks in advance of trial"). This is particularly true under the facts of this case. Mr. Mongold put on apparently unanticipated extensive evidence regarding his good relationship with children, and evidence, including expert testimony, suggesting that Hannah's death could have been caused accidentally while playing the game of "airplane." Under these unique circumstances, the trial court properly found good cause for excusing the State's failure to provide pretrial notice and in making an initial statement that no Rule 404(b) evidence would be introduced.[10] *See United States v. Smith*, 383 F.3d 700, 707 (8th Cir.2004) (good cause shown for failing to provide notice of Rule 404(b) evidence until day of trial); *United States v. Scholl*, 166 F.3d 964, 976 (9th Cir. 1999) (same); *United States v. Lopez–Gutierrez*, 83 F.3d 1235, 1241 (10th Cir.1996) (same); *United States v. Archibald*, 212 Fed. Appx. 788, 795 (11th Cir.2006) (same); *Myrick v. State*, 787 So.2d 713, 716 (Ala.Crim. App.2000) (same).

▆ **(2) Acquittal of the prior felony child abuse charge.** Next, Mr. Mongold

argues that evidence of the prior child abuse incident should not have been introduced because he pled guilty to domestic battery and not the original felony child abuse charge. Mr. Mongold equates the dismissal of the felony child abuse charge to an acquittal. To support his argument, Mr. Mongold cites *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). *Grady* holds that

> [t]he Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted.

495 U.S. at 510, 110 S.Ct. at 2087, 109 L.Ed.2d at 557. *Grady* does not support Mr. Mongold's position for two reasons. First, and foremost, *Grady* was expressly overruled by the United States Supreme Court in *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). *Dixon* held:

> We have concluded ... that *Grady* must be overruled. Unlike *Blockburger* [*v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)] analysis, whose definition of what prevents two crimes from being the "same offence," U.S. Const., Amdt. 5, has deep historical roots and has been accepted in numerous precedents of this Court, *Grady* lacks constitutional roots. The "same-conduct" rule it announced is wholly inconsistent with earlier Supreme Court precedent and with the clear common-law understanding of double jeopardy.

*Dixon*, 509 U.S. at 704, 113 S.Ct. at 2860, 125 L.Ed.2d at 573.[11]

The second reason that *Grady* does not support Mr. Mongold's position is that *Grady* had nothing to do with the introduction of Rule 404(b) evidence. In *Grady* the defen-

---

10. Even if this Court had concluded that the trial court abused its discretion in finding good cause had been shown, we would have found that the failure to provide pretrial notice under the facts of this case was harmless error. *See United States v. Watson*, 409 F.3d 458, 465 (D.C.Cir. 2005) ("Even assuming arguendo that the prosecution failed to bear its Rule 404(b) notice obligation, this Court holds that [the defendant] failed to show prejudice from the error."); *Peo-*

*ple v. Hawkins*, 245 Mich.App. 439, 628 N.W.2d 105, 114 (2001) (holding that failure to provide pretrial notice of Rule 404(b) evidence deemed harmless error).

11. We wish to point out that counsel has a duty to inform this Court that a case he/she seeks to rely upon is no longer good law.

dant had pled guilty in a New York state court to the misdemeanor offenses of driving while intoxicated and failing to keep to the right of the median. After the guilty plea was accepted, the defendant was charged by indictment with, *inter alia,* reckless manslaughter, criminally negligent homicide, and third-degree reckless assault, all of which were based on the same incident which had given rise to the misdemeanor charges. The defendant moved to dismiss the indictment on double jeopardy grounds. The New York trial court denied the motion. The defendant, thereafter sought a writ of prohibition from a mid-level appellate court. That court denied the writ. The defendant appealed to New York's highest court. The New York court found a double jeopardy violation and reversed. The prosecutor thereafter appealed to the United States Supreme Court. The United State Supreme Court affirmed the decision of New York's highest court.

In the instant proceeding, the State prosecuted Mr. Mongold for the death of Hannah in 2004, not for the injury to a different child in 2002. Therefore, the issue of *Grady's* double jeopardy principle simply has no application to Mr. Mongold's prosecution nor to the use of a prior child abuse incident for purposes of Rule 404(b).

Assuming, as argued by Mr. Mongold, that the dismissal of the felony child abuse charge, in exchange for a plea to domestic battery, constituted an acquittal of the felony charge, evidence of the underlying child abuse incident may be used for purposes of Rule 404(b). That issue was addressed by the United States Supreme Court in *Dowling v. United States,* 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). In *Dowling,* the defendant was prosecuted by the federal government for robbing a Virgin Island bank. During the trial, the government introduced evidence, under Rule 404(b) of the Federal Rules of Evidence,[12] of the defendant's involvement in a burglary and attempted robbery in a home. The trial court permitted the evidence even though the defendant had been tried and acquitted of all charges stemming from the burglary. A jury convicted

the defendant of the bank robbery charge, and the conviction was upheld by a federal appellate court. The United States Supreme Court granted certiorari to decide whether double jeopardy principles prohibited use of Rule 404(b) to introduce evidence involving the acquitted burglary charge. The United States Supreme Court ruled that double jeopardy principles did not bar use of the evidence:

> For present purposes, we assume for the sake of argument that Dowling's acquittal established that there was a reasonable doubt as to whether Dowling was the masked man who entered [the victim's] home ... two weeks after the First Pennsylvania Bank robbery. But to introduce evidence on this point at the bank robbery trial, the Government did not have to demonstrate that Dowling was the man who entered the home beyond a reasonable doubt: the Government sought to introduce [the evidence] under Rule 404(b), and, as mentioned earlier, ... [i]n the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor. Because a jury might reasonably conclude that Dowling was the masked man who entered [the victim's] home, even if it did not believe beyond a reasonable doubt that Dowling committed the crimes charged at the first trial, the collateral-estoppel component of the Double Jeopardy Clause is inapposite.
>
> Our decision is consistent with other cases where we have held that an acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof.

*Dowling,* 493 U.S. at 348–49, 110 S.Ct. at 672, 107 L.Ed.2d at 717–18 (internal quotation marks and citation omitted).[13]

 Consistent with *Dowling,* we now hold that the fact that a criminal charge against a defendant is dismissed or that he/she is acquitted of the same does not prohibit use of the incident under Rule 404(b) of the

---

**12.** The West Virginia and Federal rules are almost identical.

**13.** The Supreme Court also rejected a due process challenge to use of the evidence.

West Virginia Rules of Evidence. Consequently, the fact that the felony child abuse charge against Mr. Mongold was dismissed did not prohibit use of the incident pursuant to Rule 404(b).

### B. Evidence Concerning Mr. Mongold's Loss of Employment

■ The second issue raised by Mr. Mongold involves the State's cross-examination of his wife and his father regarding the reason for his loss of employment. Mr. Mongold contends that the trial court committed error in allowing the State to cross-examine his wife and father about the circumstances of his loss of employment. This Court has held that, "[i]n determining whether the scope of cross-examination has been violated, broad discretion is given to the trial court, and we will not disturb that ruling absent a clear abuse of discretion." *State v. Potter*, 197 W.Va. 734, 749, 478 S.E.2d 742, 757 (1996). *See also* Syl. pt. 4, *State v. Carduff*, 142 W.Va. 18, 93 S.E.2d 502 (1956) ("The extent of the cross-examination of a witness is a matter within the sound discretion of the trial court; and in the exercise of such discretion, in excluding or permitting questions on cross-examination, its action is not reviewable except in the case of manifest abuse or injustice."). We have also observed that

> [s]everal basic rules exist as to cross-examination of a witness. The first is that the scope of cross-examination is coextensive with, and limited by, the material evidence given on direct examination. The second is that a witness may also be cross-examined about matters affecting his credibility. The term "credibility" includes the interest and bias of the witness, inconsistent statements made by the witness and to a certain extent the witness' character. The third rule is that the trial judge has discretion as to the extent of cross-examination.

Syl. pt. 4, *State v. Richey*, 171 W.Va. 342, 298 S.E.2d 879 (1982). *See also* W. Va. R. Evid. 611(b)(2) ("Non–Party Witnesses. Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the non-party witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.").

■ (1) **Cross-examination of Mr. Mongold's father.** Mr. Mongold's employment status was first raised by Mr. Mongold during the direct examination of his father:

Q. Okay. All right. And you were at the home on the weekends, and I assume you work during the week too, right?

A. Yes. Jeremiah [Mr. Mongold] was employed with me.

Q. Where do you work?

A. Lantz Construction Company in Winchester, project superintendent. We do commercial buildings.

The State followed up on the issue of Mr. Mongold's employment during its cross-examination of his father:[14]

Q. Does he still work with you at Lantz?

A. No, no, he does not due to the fact of what he's been going through, missing time. Our work got slow in the winter and—and he had to miss so much time, that they let him off.

Q. Did he get laid off or did he get terminated?

A. Well, I'm not sure which. I mean, I don't know. You would have to ask Jeremiah about that.

Mr. Mongold continued the issue of his employment during redirect examination of his father:

Q. . . . Jeremiah wasn't terminated, let go for misconduct, was he?

A. Not on the job site. They had a Christmas party and something happened there. I was not there.

Q. You don't know what it was?

A. No.

Q. And you say he missed a lot of work?

A. Yes.

Q. What was that a result of?

---

**14.** Mr. Mongold objected to the questioning on the grounds of relevancy.

A. Because of the hearing, hearings and everything mostly due to the incident that happened to Hannah.

The State followed up on the issue of the Christmas party incident during its recross-examination of Mr. Mongold's father:

Q. So he was not terminated for any misconduct at work?

A. Not that I'm aware of.

Q. He was terminated for some misconduct at the company Christmas party?

A. I didn't get into it a whole lot. I understand that there was a Christmas party; and there was some other people that was involved and there was some drinking going on, and that's all I know about it.

So, to the extent that Mr. Mongold alleges that the trial court committed error in allowing the State to question his father about his employment status, we find no merit to the contention. The record clearly demonstrates that Mr. Mongold was the first to raise the issue of his employment status during the direct examination of his father. "[T]his Court has recognized that the scope of cross-examination is coextensive with the evidence given on direct examination; that is, a witness may be cross-examined on matters which are raised on direct examination." *State v. Justice*, 191 W.Va. 261, 269, 445 S.E.2d 202, 210 (1994). *See also* Syl. pt. 2, in part, *State v. Bowman*, 155 W.Va. 562, 184 S.E.2d 314 (1971) ("An appellant or plaintiff in error will not be permitted to complain of error in the admission of evidence which he offered or elicited[.]").

■ (2) Cross-examination of Mr. Mongold's wife. The issue of Mr. Mongold's employment status was again raised by him during the direct examination of his wife:[15]

Q. Okay. All right. Jeremiah, when you all moved in together and even before that, he was employed?

A. Yes.

Q. Where did he work?

A. Lantz Construction out of Winchester.

Q. And generally, what days of the week and what hours of the week would he work?

A. Monday through Friday, I don't know, normal hours, six something to three, sometimes a little later than three.

The State followed up on the issue of Mr. Mongold's employment during its cross-examination of his wife:

Q. Okay. Do you know anything about Mr. Mongold losing his job there at Lantz Construction?

A. Yes, sir, I do.

Q. Do you know why that was?

A. Yes, sir, I do.

Q. And why was that?

A. Jeremiah and I had gotten into an argument at a company dinner and he was being nasty to me, and his friends, they observed him being nasty. And they all got into a confrontation and got into a fight which resulted in the end, Jeremiah punching a hole into the wall. And I guess that is the initial reason why they actually fired him rather than pressing charges.

Mr. Mongold contends that it was error for the trial court to permit the State to elicit testimony from his wife concerning the reason he lost his job. We disagree.

It has been recognized that " '[w]hen the accused calls [his] spouse to testify, the prosecution can cross-examine as to those matters covered, or matters directly related to those matters covered, on direct examination.' " *State v. Bohon*, 211 W.Va. 277, 282 n. 3, 565 S.E.2d 399, 404 n. 3 (2002) (quoting 1

15. Prior to questioning Mr. Mongold's wife about his employment, the State, during a bench conference on another issue, informed the trial court that it would ask her about his loss of employment. Mr. Mongold argued that the matter was irrelevant. The trial court held that such questioning could occur because Mr. Mongold opened the door to the issue when he questioned his father about the matter. Although we have

determined that a different reason justified the questioning, this is of no moment. *See Murphy v. Smallridge*, 196 W.Va. 35, 36–37, 468 S.E.2d 167, 168–69 (1996) ("An appellate court is not limited to the legal grounds relied upon by the circuit court, but it may affirm or reverse a decision on any independently sufficient ground that has adequate support.").

Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 5–4(D)(2)(b), at 5–84 (4th ed.2000)). The record clearly shows that Mr. Mongold asked his wife on direct examination about his employment, including the days and hours that he worked. The issue of his termination from employment was directly related to this line of questioning. Consequently we find no error in the State's cross-examination of Mr. Mongold's wife.[16]

### C. Admission of Autopsy Photos of the Victim

The final issue raised by Mr. Mongold concerns the admission of five photographs of Hannah. Two of the photographs depict Hannah's entire body lying on a morgue table, face up and face down. The remaining three photographs are autopsy images revealing parts of Hannah's exposed skull. Mr. Mongold argued that the photographs were gruesome and should not have been admitted into evidence. We disagree.

■■■ We begin by observing that "[t]he general rule is that pictures or photographs that are relevant to any issue in a case are admissible." *Roberts v. Stevens Clinic Hosp., Inc.*, 176 W.Va. 492, 497, 345 S.E.2d 791, 796 (1986). In the case of *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994), Justice Cleckley outlined factors that must be considered in assessing the admissibility of photographs. In Syllabus point 8 of *Derr* we stated "[t]he admissibility of photographs over a gruesome objection must be determined on a case-by-case basis pursuant to Rules 401 through 403 of the West Virginia Rules of Evidence." 192 W.Va. 165, 451 S.E.2d 731. In Syllabus point 10, the *Derr* opinion carved out the test for the admissibility of photographs:

Rule 401 of the West Virginia Rules of Evidence requires the trial court to determine the relevancy of the exhibit on the basis of whether the photograph is probative as to a fact of consequence in the case. The trial court then must consider whether the probative value of the exhibit is substantially outweighed by the counterfactors listed in Rule 403 of the West Virginia Rules of Evidence. As to the balancing under Rule 403, the trial court enjoys broad discretion. The Rule 403 balancing test is essentially a matter of trial conduct, and the trial court's discretion will not be overturned absent a showing of clear abuse.

*Id.*

■■■ In the instant case, the trial court followed the requirements of *Derr* in admitting the five photographs. The trial court determined that the photographs were relevant in showing the location of Hannah's injuries and in assisting the State's medical expert in describing those injuries to the jury. After finding the photographs to be relevant, the trial court weighed their probative value against their prejudicial nature. In so doing, the trial court found that the photographs were in black and white and did not show blood. The trial court also found that the autopsy photographs would be cropped so as to minimize showing the full skull. With these considerations in view the trial court held that

[t]he prosecutor will have witnesses testify about the condition of the child and her injuries. Since the testimony will directly relate to the photographs and may be of a technical nature and because the charge is child abuse by custodian resulting in death of a child which requires proof of an intentional and malicious infliction of physical pain and impairment of physical condition

16. Mr. Mongold contends in this appeal that evidence of the basis for his termination was subject to analysis under Rule 404(b) prior to its admission. We disagree. First, there is nothing in the record which indicates that the State knew what Mr. Mongold's wife would say in response to the question about his employment termination. Second, the only objection to the questioning made by Mr. Mongold was that of relevancy. To the extent that Mr. Mongold believed that the response to the question would implicate Rule 404(b), he should have made an objection on that basis and afforded the trial court an opportunity to determine whether Rule 404(b) applied. "[s]ince an objection only preserves the specific grounds named, if an objection naming an untenable ground is overruled, the ruling will be affirmed on appeal even though a good but unnamed ground existed for exclusion of the evidence." 1 Cleckley, *Handbook on Evidence* § 1–7(C)(2), at 1–94 (footnote omitted).

other than by accidental means causing death, the court finds that the probative value outweighs the prejudicial effect on [the] photographs[.]

Although we find that the autopsy photographs may be characterized as gruesome, we do not believe that those photographs were unduly prejudicial. As we noted in *Derr*, "[g]ruesome photographs simply do not have the prejudicial impact on jurors as once believed by most courts. The average juror is well able to stomach the unpleasantness of exposure to the facts of a murder without being unduly influenced.... [G]ruesome or inflammatory pictures exists more in the imagination of judges and lawyers than in reality.' " *Derr*, 192 W.Va. at 177 n. 12, 451 S.E.2d at 743 n. 12 (quoting *People v. Long*, 38 Cal.App.3d 680, 689, 113 Cal.Rptr. 530, 537 (1974)). We have reviewed all of the photographs, paying particular attention to the autopsy photographs, and do not find that their prejudicial impact outweighed their probative value. Consequently, we do not find that the trial court abused its discretion by admitting the photographs.

## IV.

## CONCLUSION

The trial court's order convicting and sentencing Mr. Mongold for the crime of death of a child by a parent, guardian or custodian by child abuse is affirmed.

Affirmed.

STARCHER, J., concurring:

(Filed June 29, 2007)

I concur with the majority opinion. I write separately to address the issue of the admissibility of Rule 404(b) evidence.

In *State v. Scott*, 206 W.Va. 158, 168, 522 S.E.2d 626, 636 (1999), I stated in my dissent that Rule 404(b) evidence has "become a runaway train in criminal cases." I continue to adhere to this opinion. In far too many cases, prosecutors gain an unfair advantage by telling the jury about a defendant's "other bad acts," thereby tainting the jury's consideration of the evidence relating to the actual offense being tried. For example, once a jury hears that a defendant has been convicted of a similar crime in the past, the jury is far more likely to believe that the defendant is guilty of the charged offense. *State v. Fox*, 207 W.Va. 239, 241, 531 S.E.2d 64, 66 (1998) (Starcher, J. dissenting opinion). Such prejudice is almost inherent in "other bad acts" evidence, and this Court has, far too often, allowed the prosecutors to get away with this unfair practice.

However, the instant case provides a good example of the rare instance when Rule 404(b) "other bad acts" evidence should properly be admitted.[1]

In the instant case, the appellant argued that the court erred in admitting testimony about a previous domestic abuse incident involving the appellant, and in admitting testimony about a violent incident at a Christmas party.

However, the evidence of the prior domestic abuse incident involving a child rebutted the appellant's claim of accident or mistake. The appellant claimed that any injury to the child victim in the instant case was accidental and inadvertent. Yet, in the previous incident, the appellant had injured another child, either intentionally or due to a reckless disregard for the child's safety.

Moreover, the appellant offered evidence tending to show that he was a person with a good reputation and a good character. The appellant called neighbors who testified that they were comfortable with leaving the appellant alone with their children. The appellant's counsel specifically asked one witness: "Do you feel comfortable with [the appellant]

---

1. The text of *West Virginia Rules of Evidence*, Rule 404(b), follows:

 (b) *Other Crimes, Wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide pretrial notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Jeremiah being around your children?" The prosecutor, therefore, quite reasonably presented evidence of the previous incident to show that the appellant was not, in fact, a man who could be trusted around children.

*West Virginia Rules of Evidence,* Rule 405(a), states that once the defense has presented evidence of the defendant's character, the prosecution is allowed to inquire into specific incidents of conduct.[2] Since the appellant "opened the door" to such evidence, the trial court properly admitted the evidence of the prior domestic abuse incident.

The trial court also did not err in admitting evidence about an incident that occurred at a Christmas party, because the appellant again "opened the door" to this evidence.

The appellant's counsel asked the appellant's father about the appellant's employment, in an effort to show that the appellant had a stable living situation. On cross-examination, the prosecutor asked the appellant's father whether the appellant still maintained the employment in question. Learning that the appellant no longer had this employment, the prosecutor asked why. The appellant's father said that there had been an incident, but that he did not know the details. During the subsequent testimony of the appellant's wife, the appellant's counsel again brought up the issue of his employment—again to show the stability of the appellant's living situation. On cross-examination, the prosecutor asked about the incident at the Christ-

mas party that led to the appellant's losing his job.

Normally, the evidence about the incident at the Christmas party would have been inadmissible. However, because the appellant opened the door to this testimony on direct examination by asking his own witnesses about the appellant's employment, the evidence about the Christmas party incident, which refuted the appellant's evidence of his stability, was admissible.

Rule 404(b) evidence is subject to the "probative-versus-prejudicial" balancing test. *See* Syllabus Point 9, *State v. Derr,* 192 W.Va. 165, 451 S.E.2d 731 (1994).[3] Of course, the Rule 404(b) evidence in the instant case was highly prejudicial. However, the defendant invited the admission of such evidence when he tried to portray himself as a peaceful person who could be trusted around children.

I believe that the trial court properly weighed the prejudicial versus probative factors, and came to the correct decision to admit the evidence.

For these reasons, I concur with the Court's judgment and decision in affirming the appellant's conviction.[4]

---

2. *West Virginia Rules of Evidence,* Rule 405(a), states:

 (a) *Reputation or opinion.* In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

3. Although Rules 401 and 402 of the *West Virginia Rules of Evidence* strongly encourage the admission of as much evidence as possible, Rule 403 of the *West Virginia Rules of Evidence* restricts this liberal policy by requiring a balancing of interests to determine whether logically relevant is legally relevant evidence. Specifically, Rule 403 provides that although relevant evidence may nevertheless be excluded when the

danger of unfair prejudice, confusion, or undue delay is disproportionate to the value of the evidence.

4. I also agree that the trial court did not err in admitting the autopsy photographs. The medical examiner used the photographs to aid her in her testimony. The photographs were taken in black and white, to avoid some of their gruesome nature. The trial court made a special effort to ensure that the photographs were cropped to reduce any prejudicial effect that they may have had on the jury. The court even excluded one of the photographs, finding that it would be too prejudicial. The court did not err in concluding that the photographs were necessary to the medical examiner's testimony, and showed the victim's injuries in a way that a diagram or a mere description could not.